## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DEANNA MCBREARTY and MARYLYNN HARTSEL,
individually, derivatively and on behalf of all others
similarly situated,

Plaintiffs,

- against -

THE VANGUARD GROUP, INC., GEORGE U. SAUTER,
DUANE F. KELLY, JOHN J. BRENNAN, CHARLES D.
ELLIS, RAJIV L. GUPTA, AMY GUTMANN, JOANN
HEFFERNAN HEISEN, ANDRÉ F. PEROLD, ALFRED M.
RANKIN, JR., and J. LAWRENCE WILSON, ACADIAN
ASSET MANAGEMENT, LLC, RONALD D. FRASHURE,
JOHN R. CHISHOLM, BRIAN K. WOLAHAN,
ALLIANCEBERNSTEIN LP, HENRY S. D'AURIA, SHARON
E. FAY, KEVIN F. SIMMS, MARATHON ASSET
MANAGEMENT, LLP, WILLIAM J. ARAH, JEREMY H.
HOSKING, and NEIL M. OSTRER,

Defendants,

- and -

VANGUARD INTERNATIONAL EQUITY INDEX FUNDS,
d/b/a VANGUARD EUROPEAN STOCK INDEX FUND, and
VANGUARD HORIZON FUNDS, d/b/a VANGUARD GLOBAL
EQUITY FUND

Nominal Defendants.

CASE NO. 08 CV 7650 (DLC) (ECF)

## TRUSTEE AND FUND DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

David H. Braff  (DB-0761)
Penny Shane  (PS-0185)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone:  212-558-4000
Facsimile:  212-558-3588
Email:  dbraff@sullcrom.com

October 27, 2008

*Counsel for the Trustee and Fund
Defendants*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

THE ALLEGATIONS OF THE COMPLAINT..........................................................3

ARGUMENT ...............................................................................................................6

I.   THE COMPLAINT FAILS TO ALLEGE THE ELEMENTS OF A FEDERAL
     RICO OR STATE LAW CLAIM. ......................................................................6

     A.   Because the Complaint Does Not State a Federal Claim, the Entire Action
          Should Be Dismissed. ...............................................................................6

     B.   The Complaint Fails to Plead Any Conduct Actionable Under the Funds'
          Declarations of Trust.................................................................................7

     C.   The Plaintiffs Fail to Plead Facts Necessary to State an Improper Investment
          Claim Under Delaware Law. .....................................................................9

     D.   The Complaint Does Not Allege Waste.....................................................11

II.  ALL DIRECT CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS PLEAD
     DERIVATIVE, NOT DIRECT, INJURY. ..........................................................12

     A.   Plaintiffs' Individual and Class Claims Under RICO Must Be Dismissed
          Because Any Injury Is Derivative, Not Direct.........................................12

     B.   Plaintiffs' Individual and Class Claims Under State Law Must Be Dismissed
          Because Any Injury Is Derivative, Not Direct.........................................13

          1.   Plaintiffs' Claims Are Derivative Under *Tooley*. ....................14

          2.   Plaintiffs' Attempts to Circumvent *Tooley* Fail........................15

III. ALL DERIVATIVE CLAIMS MUST BE DISMISSED FOR FAILURE TO
     COMPLY WITH STATUTORY DEMAND AND CONTEMPORANEOUS
     OWNERSHIP REQUIREMENTS. .....................................................................17

     A.   The Complaint Does Not Plead Demand Futility Under *Rales*. ............18

     B.   The Complaint Does Not Plead Demand Futility Under *Aronson*. ........22

     C.   The Complaint Does Not Satisfy the Contemporaneous Ownership Rule...........23

IV.  THE COURT SHOULD DISMISS THIS ACTION WITH PREJUDICE AND
     WITHOUT LEAVE TO AMEND........................................................................24

CONCLUSION..........................................................................................................25

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Blasband* v. *Rales*,
     971 F.2d 1034 (3rd Cir. 1992) ...................................................................................19

*Debussy LLC* v. *Deutsche Bank AG*,
     242 F. App'x 735 (2d Cir. 2007) ...............................................................................13

*Debussy LLC* v. *Deutsche Bank AG*,
     No. 05 Civ. 5550 (SHS), 2006 WL 800956 (S.D.N.Y. Mar. 29, 2006) ...........13, 16

*Ganino* v. *Citizens Utilities Co.*,
     228 F.3d 154 (2d Cir. 2000)..........................................................................................5

*Halpert Enters., Inc.* v. *Harrison*,
     362 F. Supp. 2d 426 (S.D.N.Y. 2005)..........................................................................23

*Hogan* v. *Baker*,
     No. Civ. A. 305CV0073P, 2005 WL 1949476 (N.D. Tex. Aug. 12, 2005) ...............14

*In re Am. Express Co. S'holder Litig.*,
     39 F.3d 395 (2d Cir. 1994)..............................................................................................6

*In re AOL Time Warner, Inc. Secs. and "ERISA" Litig.*,
     381 F. Supp. 2d 192 (S.D.N.Y 2004)............................................................................24

*In re Bank of N.Y. Derivative Litig.*,
     320 F.3d 291 (2d Cir. 2003)..........................................................................................23

*In re Evergreen Mut. Funds Fee Litig.*,
     423 F. Supp. 2d 249 (S.D.N.Y. 2006)...........................................................................16

*In re Goldman Sachs Mut. Funds Fee Litig.*,
     No. 04 Civ. 2567 (NRB), 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006)........................16

*In re IAC/InterActiveCorp Secs. Litig.*,
     478 F. Supp. 2d 574 (S.D.N.Y. 2007)...........................................................................20

*In re Interpublic Secs. Litig.*,
     Nos. 02 Civ. 6527 (DLC), 03 Civ. 1194 (DLC), 2004 WL 2397190 (S.D.N.Y.
     Oct. 26, 2004) ............................................................................................................2, 8

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
     272 F. Supp. 2d 243 (S.D.N.Y. 2003)............................................................................5

*In re Morgan Stanley Derivative Litig.*,
     542 F. Supp. 2d 317 (S.D.N.Y. 2008)...........................................................................17

Page(s)

*In re NYFIX, Inc.*,
    567 F. Supp. 2d 306 (D. Conn. 2008)...................................................................21

*In re Verestar, Inc.*,
    343 B.R. 444 (Bankr. S.D.N.Y. 2006)....................................................................8

*Kamen* v. *Kemper Fin. Servs.*,
    500 U.S. 90 (1991)................................................................................................23

*Klein & Co. Futures, Inc.* v. *Bd. of Trade*,
    464 F.3d 255 (2d Cir. 2006)....................................................................................7

*Kramer* v. *Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991)....................................................................................5

*Lakonia Mgmt. Ltd.* v. *Meriwether*,
    106 F. Supp. 2d 540 (S.D.N.Y. 2000)...................................................................13

*Loveman* v. *Lauder*,
    484 F. Supp. 2d 259 (S.D.N.Y. 2007)...................................................................20

*Manson* v. *Stacescu*,
    11 F.3d 1127 (2d Cir. 1993)............................................................................12, 13

*McKinney* v. *Moore*,
    No. 04 Civ. 07926 (RCC), 2007 WL 1149253 (S.D.N.Y. Apr. 16, 2007) ............13

*Rand* v. *Anaconda-Ericsson, Inc.*,
    794 F.2d 843 (2d Cir. 1986)............................................................................12, 13

*RCM Sec. Fund, Inc.,* v. *Stanton*,
    928 F.2d 1318 (2d Cir. 1991).................................................................................23

*Ritchie Capital Mgmt., L.L.C.* v. *Coventry First LLC*,
    No. 07 Civ. 3494 (DLC), 2008 WL 542596 (S.D.N.Y. Feb. 29, 2008) ..................6

*Scalisi* v. *Fund Asset Mgmt., L.P.*,
    380 F.3d 133 (2d Cir. 2004)...................................................................................17

*THC Holdings Corp.* v. *Chinn*,
    No. 95 CIV. 4422 (KMW), 1998 WL 50202 (S.D.N.Y. Feb. 6, 1998) ....................8

**STATE CASES**

*Andreae* v. *Andreae*,
    Civ. A. No. 11905, 1992 WL 43924 (Del. Ch. Mar. 3, revised Mar. 5, 1992).......20

Page(s)

*Aronson* v. *Lewis*,
    473 A.2d 805 (Del. 1984) ................................................................................. passim

*Bokat* v. *Getty Oil Co.*,
    262 A.2d 246 (Del. 1970) .................................................................................. 14

*Brehm* v. *Eisner*,
    746 A.2d 244 (Del. 2000) .................................................................................. 11

*Desimone* v. *Barrows*,
    924 A.2d 908 (Del. Ch. 2007) ........................................................................... 23

*Dieterich* v. *Harrer*,
    857 A.2d 1017 (Del. Ch. 2004) ..................................................................... 15, 16

*Emerald Partners* v. *Berlin*,
    787 A.2d 85 (Del. 2001) .................................................................................... 7

*Grobow* v. *Perot*,
    539 A.2d 180 (Del. 1998) .................................................................................. 23

*In re Baxter Int'l., Inc. S'holders Litig.*,
    654 A.2d 1268 (Del. Ch. 1995) ..................................................................... 22, 23

*In re Lukens Inc. S'holders Litig.*,
    757 A.2d 720 (Del. Ch. 1999) ............................................................................ 7

*In re Walt Disney Co. Derivative Litig.*,
    731 A.2d 342 (Del. Ch. 1998) ........................................................................... 20

*Kramer* v. *W. Pac. Indus., Inc.*,
    546 A.2d 348 (Del. 1988) ............................................................................. 14, 15

*Law* v. *Law*,
    753 A.2d 443 (Del. 2000) ............................................................................... 9, 11

*Lopez* v. *Lopez*,
    243 A.2d 588 (Md. 1968) .................................................................................. 10

*Malpiede* v. *Townson*,
    780 A.2d 1075 (Del. 2001) ............................................................................. 7, 10

*Newkirk* v. *W.J. Rainey, Inc.*,
    76 A.2d 121 (Del. Ch. 1950) ............................................................................. 23

*Parnes* v. *Bally Entm't Corp.*,
    722 A.2d 1243 (Del. 1999) ................................................................................ 14

Page(s)

*Rales* v. *Blasband*,
    634 A.2d 927 (Del. 1993) ........................................................................................17, 18

*Rattner* v. *Bidzos*,
    No. Civ. A. 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ........................................21

*Ryan* v. *Gifford*,
    918 A.2d 341 (Del. Ch. 2007)........................................................................................18

*Saminsky* v. *Abbott*,
    185 A.2d 765 (Del. Ch. 1961)........................................................................................11

*Seminaris* v. *Landa*,
    662 A.2d 1350 (Del. Ch. 1995)........................................................................................20, 21

*Sims* v. *Stanley*,
    945 A.2d 1168, 2008 WL 853538 (Del. Apr. 1, 2008)........................................................6

*Spiegel* v. *Buntrock*,
    571 A.2d 767 (Del. 1990) ........................................................................................19

*Steiner* v. *Meyerson*,
    Civ. A. No. 13139, 1995 WL 441999 (Del. Ch. July 19, 1995)........................................11

*Tooley* v. *Donaldson, Lufkin, & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ........................................................................................13, 14, 15, 16

*White* v. *Panic*,
    783 A.2d 543 (Del. 2001) ........................................................................................11, 12

*Wood* v. *Baum*,
    953 A.2d 136 (Del. 2008) ........................................................................................17, 21, 22

*Zerby* v. *Allied Signal, Inc.*,
    No. 00C-07-068-FSS, 2001 WL 112052 (Del. Feb. 2, 2001)........................................6


STATUTES AND RULES

15 U.S.C. §§ 80a-1 et seq ........................................................................................18

15 U.S.C. § 80a-2 ........................................................................................18

18 U.S.C. § 1955........................................................................................4, 7, 11

18 U.S.C. §§ 1961 et seq.........................................................................................1

Page(s)

28 U.S.C. § 1367 ...................................................................................................7

Del. Code Ann. tit. 12, § 3302 ....................................................................8, 9, 10

Del. Code Ann. tit. 12, § 3801 ...............................................................17, 18, 19, 22

Del. Code Ann. tit. 12, § 3816 ....................................................................17, 22, 23

Fed. R. Civ. P. 8 ...................................................................................................21

Fed. R. Civ. P. 12 .................................................................................................1

Fed. R. Civ. P. 23.1 ..............................................................................................23

**OTHER AUTHORITIES**

*Black's Law Dictionary* (8th ed. 2004) ....................................................................9

George T. Bogert, *The Law of Trusts and Trustees* § 871 (2d ed. 1962) ..................10

James W. Moore et al., *Moore's Federal Practice* § 124.01 (3d ed. 2007) ................23

Defendants John J. Brennan, Charles D. Ellis, Rajiv L. Gupta, Amy Gutmann, JoAnn Heffernan Heisen, André F. Perold, Alfred M. Rankin, Jr., and J. Lawrence Wilson (the "Trustees") and Nominal Defendants Vanguard International Equity Index Funds, d/b/a Vanguard European Stock Index Fund, and Vanguard Horizon Funds, d/b/a Vanguard Global Equity Fund (the "European Index Fund" and the "Global Equity Fund," respectively, and collectively the "Funds") respectfully submit this memorandum of law in support of their motion to dismiss the Verified Class Action and Derivative Complaint and Jury Demand (the "complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In this litigation, otherwise typical shareholder complaints about stock price declines are being asserted solely under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq. (2000), and state common law.  The alleged wrong is not any inaccuracy or deception in defendants' dealings with the plaintiffs:  it is only the act of buying publicly traded stock in overseas gambling companies, as a component of the investment portfolios maintained by two mutual funds in which the plaintiffs invested—the European Index Fund and Global Equity Fund.  Plaintiffs allege that sometime in 2006, when share prices in overseas gambling companies declined due to a U.S. government "crackdown" on their operations, the Funds and their shareholders suffered a loss.  The two individual named plaintiffs sue not only on behalf of purported classes of the Funds' investors, but also on behalf of the Funds, named as nominal defendants.  Plaintiffs sue the Funds' Trustees who were Trustees in 2006, certain Fund advisors, and other Fund representatives.

Plaintiffs' claims are legally deficient for all the reasons detailed in the accompanying submissions by The Vanguard Group, Inc. and certain Vanguard employees ("Vanguard Defendants")—including that plaintiffs' RICO claims fail because plaintiffs have

not alleged, and indeed, cannot allege, standing, proximate causation, or any predicate RICO violations.  Because the RICO claims fail, the Court should decline to exercise supplemental jurisdiction over any state law claims.  (*See infra* Point I.A.)  The Trustees and the Funds hereby join the Vanguard Defendants' submissions in all respects and incorporate them fully by reference herein.[1]

This memorandum presents certain additional, independent grounds for dismissal, especially of those claims asserted against the Trustees and the Funds.  First, the complaint fails to address "several obstacles" imposed by Delaware law, including obstacles based on both Funds' declaration of trust provisions that "eliminate[] directors' personal liability for breaches of their fiduciary duties" or other conduct unless the Trustees allegedly acted egregiously, with a degree of culpability not alleged here.  *See In re Interpublic Secs. Litig.*, Nos. 02 Civ. 6527 (DLC), 03 Civ. 1194 (DLC), 2004 WL 2397190, at *9 (S.D.N.Y. Oct. 26, 2004).  The complaint also fails to allege critical elements of its claims for breach of fiduciary duty, negligence and waste of assets.  For example, under Delaware law governing improper investments by fiduciaries, there can be no liability unless the fiduciary *knew* or should have known about the risk at issue, and failed to act with reasonable prudence under the circumstances.  The complaint here makes no allegation that the Trustees or Funds knew or should have known about any "illegality" or prospective "crackdown" and proceeded imprudently in light of what was known.  For these reasons and more, plaintiffs have failed to allege any actionable breach or misconduct by the Trustees or the Funds.  (*See infra* Point I.B.-D.)

Second, even if, in theory, the challenged investments could support some substantive claim, dismissal would remain necessary here because any claim belongs exclusively

---

[1]    *See* Notice of Vanguard Defendants' Motion to Dismiss, filed October 27, 2008; Memorandum of Points and Authorities in Support of Vanguard Defendants' Motion to Dismiss the Complaint ("Vanguard Memorandum"), filed October 27, 2008; Vanguard Defendants'

(continued …)

to the Funds.  Plaintiffs have improperly brought "direct" claims for themselves and a putative class while putting forward "derivative" claims for the Funds, all without ever having made the requisite demand upon the Funds and without having shown "demand futility."  It is well settled in this Circuit and elsewhere that shareholders cannot assert direct claims—including RICO claims—where the injury they allege is a decline in the value of their shares in proportion to their share ownership due to an injury to the entity in which they hold shares.  Such claims can only be derivative and can only be asserted by those who held shares at the time of the challenged transaction.  But because plaintiffs made no demand on the Trustees, have not adequately alleged that demand would be futile, and have not satisfied the "contemporaneous ownership" rule, plaintiffs' derivative claims also fail.  (*See infra* Points II-III.)

## THE ALLEGATIONS OF THE COMPLAINT

The Trustees and the Funds assume the truth of the complaint's allegations for the purposes of this motion only.  Only those allegations that bear most directly on the Trustees' and Funds' dismissal motion are reviewed below.

The Funds are statutory trusts organized under Delaware law, and the Trustees are members of their boards of trustees.  (Compl. ¶¶ 15-16, 22.)  Plaintiffs Deanna McBrearty and Marylynn Hartsel are shareholders in the Funds.  (Compl. ¶ 2.)  The Vanguard Group, Inc. ("Vanguard") is an investment advisor to both Funds.  (Compl. ¶ 17.)  The Global Equity Fund's investment advisors also include Acadian Asset Management, LLC, AllianceBernstein LP, and Marathon Asset Management, LLP.  (Compl. ¶¶ 25, 27, 29.)  The non-Trustee individual defendants are associated with Vanguard or the other investment advisors and implement investment strategy for the Funds.  (Compl. ¶¶ 19-20, 26, 28, 30.)  As its name implies, the

---

(… continued)
Request for Judicial Notice, filed October 27, 2008.

European Index Fund invests in the stocks composing a certain index, rather than in stock selected for other reasons.  (*See* Compl. ¶ 2.)

The crux of plaintiffs' complaint is that, collectively, defendants "caused" or "allowed" the Funds to purchase publicly traded stock in overseas gambling companies, and that these purchases violated 18 U.S.C. § 1955, which makes it illegal to "finance . . . or own all of part of an illegal gambling business."  (Compl. ¶¶ 37-38, 46.)  According to the complaint, through these open market securities purchases alone, defendants violated and conspired to violate RICO, and committed three torts under state law:  breach of fiduciary duty, negligence, and waste.  (Compl. ¶¶ 22, 49, 55, 59-62, 141-145.)  Except for plaintiffs' waste claim, which is brought only derivatively, each claim is asserted directly, as an individual and putative class claim, as well as derivatively on behalf of the Funds.

The complaint does not identify any gambling company in which the Funds allegedly invested, when the investments occurred, where the gambling business was conducted, or which state law(s) that business allegedly violated.  (*See* Vanguard Memorandum at 13-16.) The complaint also makes no distinction among the Trustees named as defendants, or what role any of them played regarding any of the investments at issue.  The complaint just lumps all defendants together as having "allowed one or more of the Vanguard Funds to invest or continue their respective investments in illegal gambling businesses."  (Compl. ¶ 22.)  It says nothing about what any defendant knew, or when.[2]

---

[2]      Similarly, the complaint says nothing about the Funds' authority to pursue investments in gambling companies.  According to the Funds' organizational documents, the Trustees had full authority to "invest in . . . all types of securities . . . including . . . all types of . . . stocks . . . issued . . . by any corporation or organization organized under any foreign law."  Indeed, the "purpose" of the Funds is to "invest[] . . . in securities."  (Vanguard International Equity Index Funds Declaration of Trust, Art. II; Art. IV, § 3(a); Vanguard Horizon Funds Declaration of Trust, Art II; Art. IV, § 3(a), attached as Exs. A-B to Shane Decl.)  For these activities, the Trustees cannot be held liable except for "willful misfeasance" or similarly egregious misconduct.  (*See infra* Point I.B.)  The Court may take judicial notice of the Funds' declarations of trust, which have been

(continued ...)

The complaint is equally vague about the basis for plaintiffs' assertion that the investments at issue caused cognizable harm.  Plaintiffs allege only that they were injured "[i]n or about 2006" when a law enforcement "crackdown" on illegal gambling companies caused the stock of such companies to decrease in value.  (Compl. ¶ 51.)  Because the Funds held some declining stock, this crackdown allegedly "resulted in injury" to plaintiffs as Fund shareholders.  (Compl. ¶ 3.)  However, the complaint does not specify transactions, time periods, or any particular downward price movement in any gambling company stock "[i]n or about 2006."  It does not even allege any decline in the prices of the mutual fund shares plaintiffs owned.

Because the share prices of both Funds *rose* during 2006, neither the complaint nor any material it references reveals the facts necessary even to understand plaintiffs' claim of loss.  (European Index Fund Historical Prices; Global Equity Fund Historical Prices, attached as Exs. C-D to Shane Decl.)[3]  In any event, nowhere does the complaint distinguish any loss allegedly suffered by the named plaintiffs from any loss suffered by other shareholders, whether through share price declines or through "fees, commissions and other compensation" paid by the shareholders.  (*See* Compl. ¶¶ 115-116.)  To the contrary, the complaint says plaintiffs' individual claims are typical and common.  (Compl. ¶ 85(b)-(c).)

---

(… continued)
filed with the Securities Exchange Commission ("SEC").  *See Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of contents of corporate filings with SEC).

[3]     Indeed, it is far from clear that plaintiffs suffered *any* loss, even indirectly, as a result of the 2006 "crackdown."  Deanna McBrearty first purchased shares of the European Index Fund on May 20, 2005 (Compl. ¶ 11), when it was trading at $25.59 per share.  By the end of 2006, Index Fund shares were trading at $36.04 per share.  McBrearty thus saw a sizable *gain* in the period she is now complaining about.  Similarly, if (as alleged) Marylynn Hartsel first purchased Global Index Fund shares "prior to July 1, 2006" (Compl. ¶ 13), then she would have enjoyed a gain from roughly $21.27 per share as of July 1, 2006, to $22.92 by the end of the year.  (European Index Fund Historical Prices; Global Equity Fund Historical Prices, attached as Exs. C-D to Shane Decl.)  The Court may take judicial notice of mutual fund share prices.  *See Ganino* v. *Citizens Utilities Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 254 n.9 (S.D.N.Y. 2003).

Because there is no basis to distinguish plaintiffs' claims as individuals from their claims as shareholders, the complaint presents "derivative" claims on behalf of the Funds, as alternatives to the direct and class claims on behalf of shareholders.  (Compl. ¶¶ 122-145.) However, plaintiffs plead no facts that satisfy the "demand" requirement applicable to any derivative claim.  Plaintiffs admit that they made *no demand* upon the Trustees before bringing suit.  (Compl. ¶ 65.)  In conclusory terms, the complaint alleges only that demand would have been futile because no Trustee could have "properly exercised his or her independent and disinterested business judgment in responding to a demand."  (Compl. ¶ 69.)

## ARGUMENT

I.  **THE COMPLAINT FAILS TO ALLEGE THE ELEMENTS OF A FEDERAL RICO OR STATE LAW CLAIM.**

    A.  **Because the Complaint Does Not State a Federal Claim, the Entire Action Should Be Dismissed.**

Each of the complaint's RICO claims (Counts I through IV and VII through X) fails for the reasons set forth in the Vanguard Memorandum.  Plaintiffs lack standing or injury "by reason of" alleged unlawful conduct.  (*See* Vanguard Memorandum at 5-13.)  *Ritchie Capital Mgmt., L.L.C.* v. *Coventry First LLC*, No. 07 Civ. 3494 (DLC), 2008 WL 542596, at *6 (S.D.N.Y. Feb. 29, 2008); *In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 400 & n.3 (2d Cir. 1994).[4]  Plaintiffs' RICO claims also fail because the complaint does not sufficiently allege

---

[4]    The proximate cause component of RICO's standing and causation requirements is derived from the "common law proximate cause requirement."  *See Am. Express*, 39 F.3d at 399. Under Delaware law, "[t]o state a valid claim in tort, a plaintiff must allege an intentional wrong (or a breach of duty to the plaintiff) committed by the defendant, which constitutes the legal or 'proximate' cause of some legally cognizable harm."  *Zerby* v. *Allied Signal, Inc.*, No. 00C-07-068-FSS, 2001 WL 112052, at *6 (Del. Feb. 2, 2001) (quotations and citations omitted); *Sims* v. *Stanley*, 945 A.2d 1168, 2008 WL 853538, at *2 (Del. Apr. 1, 2008).  Many of the problems identified in the Vanguard Memorandum with respect to RICO causation undermine the causation required to sustain state law tort claims as well.  This provides an independent basis to dismiss Counts VI and XII, alleging negligence.

predicate RICO acts in violation of 18 U.S.C. § 1955 through purchases of shares in publicly traded companies.  (*See* Vanguard Memorandum at 13-16.)

        Because the RICO claims fail, the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over all state law claims (Counts V, VI, and XI through XIII) and should instead dismiss the action in its entirety.  Section 1367(c) enumerates several bases for declining to exercise supplemental jurisdiction, including that "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "It is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."  *Klein & Co. Futures, Inc.* v. *Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006).

> **B.**    **The Complaint Fails to Plead Any Conduct Actionable Under the Funds'**
>         **Declarations of Trust.**

        Under the Funds' declarations of trust, "[a] Trustee shall be liable to . . . any Shareholder solely for his or her own willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of the office of Trustee."  (Vanguard International Equity Index Funds Declaration of Trust, Art. VII, § 3; Vanguard Horizon Funds Declaration of Trust, Art. VII, § 3, attached as Exs. A-B to Shane Decl.)  The Delaware Supreme Court has held repeatedly that shareholder complaints asserting violations of fiduciary duty (other than the duties of loyalty and good faith, not at issue here) must be dismissed where barred by exculpatory provisions.  *Emerald Partners* v. *Berlin*, 787 A.2d 85, 91 (Del. 2001); *Malpiede* v. *Townson*, 780 A.2d 1075, 1093 (Del. 2001).  Where an exculpatory provision would preclude recovery, permitting an action to continue serves "no useful purpose."  *Emerald Partners*, 787 A.2d at 92; *see also In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 728 (Del. Ch. 1999) ("Any claim that . . . does not also allege the existence of circumstances constituting one of the exceptions to that exculpatory provision must be dismissed.").  This Court has consistently

applied Delaware law to dismiss claims barred by exculpatory provisions. *E.g.*, *In re Verestar, Inc.*, 343 B.R. 444, 471-75 (Bankr. S.D.N.Y. 2006) (breach of duty of care); *THC Holdings Corp. v. Chinn*, No. 95 CIV. 4422 (KMW), 1998 WL 50202, at *8 (S.D.N.Y. Feb. 6, 1998) (breach of fiduciary duty); *see also In re Interpublic*, 2004 WL 2397190, at * 9 (under Delaware law plaintiffs must allege "bad faith, intentional misconduct, or a knowing violation of law" to overcome an exculpation from liability for breaches of fiduciary duty) (quotations and alterations omitted).

Plaintiffs do not even come close to alleging willful misfeasance, bad faith, or gross negligence on the part of any Trustee, and the Court should therefore dismiss all claims against the Trustees. The crux of plaintiffs' complaint is that the Trustees failed to prevent the Funds from investing in the securities of publicly traded overseas gambling companies. (Compl. ¶¶ 22, 114, 120.) However, the very purpose of the Funds is to "invest[] primarily in securities," and the Trustees are specifically permitted to "invest in . . . all types of securities . . . including . . . all types of . . . stocks . . . issued . . . by any corporation or organization organized under any foreign law." (Vanguard International Equity Index Funds Declaration of Trust, Art. II; Art. IV, § 3(a); Vanguard Horizon Funds Declaration of Trust, Art. II; Art. IV, § 3(a), attached as Exs. A-B to Shane Decl.) Plaintiffs cannot impose liability on the Trustees for doing what the declarations of trust explicitly permit, in the absence of allegedly willful misfeasance, bad faith, gross negligence, or reckless disregard of duty.

The closest the complaint comes to alleging that the Trustees did anything wrong is a single paragraph asserting, without more, that all defendants "conducted, or caused to be conducted or were reckless in failing to conduct or cause to be conducted, due diligence." (Compl. ¶ 50.) This is meaningless. It alleges no facts demonstrating a "reckless disregard" of the duty to act with the "care, skill, prudence and diligence" of a prudent person in like circumstances. Del. Code Ann. tit. 12, § 3302(a) (2008). To the contrary, according to the

complaint, the Trustees hired professional "investment advisers" for the Funds and delegated "managerial or operational oversight" duties to them.  (Compl. ¶¶ 17, 25, 27, 29.)  There is no factual allegation that the Trustees were "reckless" or imprudent for hiring these professionals. Indeed, the Trustees were explicitly permitted by the declarations of trust to authorize "Investment Adviser[s] to determine . . . without prior consultation with the Trustees what investments shall be purchased, held, sold, or exchanged . . . and to make changes in the Trust's investments."  (Vanguard International Equity Index Funds Declaration of Trust, Art. IV, § 6(a); Vanguard Horizon Funds Declaration of Trust, Art. IV, § 6(a), attached as Exs. A-B to Shane Decl.)  Plaintiffs identify no "red flag" that anyone's due diligence—the Trustees' or the investment advisers'—allegedly should have uncovered.

With regard to the European Index Fund's investments in particular, the complaint's silence about the Trustees' conduct (or lack of conduct) cannot be an accident.  An index fund is a "mutual fund that invests in the stock of companies constituting a specific market index, such as Standard & Poor's 500 stocks, and thereby tracks the stock average."  *Black's Law Dictionary* (8th ed. 2004) (defining "index fund").  The complaint does not allege that the European Index Fund deviated from the investments composing the index it tracked.  Nothing suggests that the Index Fund did deviate in any way.  The Trustees cannot be subjected to litigation for *not deviating* from holdings in an index that the Fund was established to track.

**C.    The Plaintiffs Fail to Plead Facts Necessary to State an Improper Investment Claim Under Delaware Law.**

Under Delaware law, challenges to investment decisions by fiduciaries must be based on departures from explicit statutory standards, the purpose of which is "the protection of the trustee."  *Law* v. *Law*, 753 A.2d 443, 449 (Del. 2000) (quoting Del. Code Ann. tit. 12, § 3302(c)).  By statute, the "propriety of an investment decision" depends on "what the fiduciary knew or should have known *at the time of the decision* about . . . [t]he inherent nature and

- 9 -

expected performance of the investment portfolio," the "purposes" of the trust, and other attributes of the portfolio.  Del. Code Ann. tit. 12, § 3302(a), (c).  Thus, to challenge the prudence or propriety of a fiduciary's investment decisions, pleadings must state what was known at the time about the investment, the overall portfolio, the beneficiary's purposes, and other circumstances bearing on whether the fiduciary departed from the standard of care.  *See id.*  Pleadings that omit these allegations must be dismissed.  *See Lopez* v. *Lopez*, 243 A.2d 588, 594 (Md. 1968) ("'A beneficiary seeking to obtain relief for a breach of trust must plead and prove facts which show the existence of a trust duty, the failure of the trustee to perform it and that consequently the court should grant the requested remedy.'") (quoting George T. Bogert, *The Law of Trusts and Trustees* § 871 (2d ed. 1962)); *Malpiede*, 780 A.2d at 1084 (dismissing breach of fiduciary duty claim for failure to "allege[] sufficient facts to support a claim that the board breached any of its fiduciary duties").

None of the state law claims (Counts V, VI, and XI through XIII) satisfies this standard.  The complaint says *nothing* about whether the investments at issue were imprudent *at the time* and in the circumstances under which they were made.  It fails to allege that the defendants even knew about the Funds' investments in gambling companies, let alone that those investments might prove too risky in light of the Funds' other holdings.  It references no reason for any defendant to have foreseen the "crackdown" or prospect of price declines "in or about 2006."[5]  Even if some risk were known, the complaint fails to plead that the risk was imprudent, or inconsistent with Fund objectives, in light of the Funds' overall portfolios.  Indeed, the complaint says *nothing* about the Funds' overall portfolios or investment objectives.

---

[5]     Where the markets for publicly-traded stocks are "efficient," publicly available information is incorporated into stock prices.  *See Basic, Inc.* v. *Levinson*, 485 U.S. 224, 246-47 (1988).  If the "crackdown" and ensuing fall in gambling stock prices had been foreseeable prior to their occurrence, gambling stock prices would have already reflected them.

These failures are especially significant here.  *Even now*, nothing in the complaint supports the contention that the Funds' investments, or even the gambling companies' conduct, were illegal under 18 U.S.C. § 1955.  (*See supra* Point I.A.)  Even now, nothing in the complaint suggests that the decline in stock price of any gambling business had a material impact on the value of Fund shares.  To the contrary, judicially noticeable stock price histories reflect that the Funds' share prices *increased* in 2006 while gambling business share prices allegedly declined. Under Delaware law, fiduciaries cannot be liable based on allegations made only in hindsight, or based on the alleged underperformance of one investment out of a portfolio that met overall investment objectives.  *Law*, 753 A.2d at 449.

### D.      The Complaint Does Not Allege Waste.

Delaware courts define corporate waste as "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade."  *White* v. *Panic*, 783 A.2d 543, 554 (Del. 2001) (citation omitted).[6]  The plaintiff must therefore plead that the defendants "irrationally squander[ed] corporate assets—for example, where the challenged transaction served no corporate purpose or where the corporation received no consideration at all."  *Id.* (quotation and citation omitted)*; see also Brehm* v. *Eisner*, 746 A.2d 244, 263 (Del. 2000) (waste is "an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration") (citation omitted).  Consequently, corporate waste claims trigger "an extreme test, very rarely satisfied by a shareholder plaintiff."  *Steiner* v. *Meyerson*, Civ. A. No. 13139, 1995 WL 441999, at *1 (Del. Ch. July 19, 1995).

---

[6]      Corporate waste principles apply to statutory trusts.  *See Saminsky* v. *Abbott*, 185 A.2d 765, 771 (Del. Ch. 1961).

Plaintiffs' waste claim (Count XIII) fails for lack of these necessary allegations. The complaint does not allege that the Funds "received no consideration at all" for their investments, *White*, 783 A.2d at 554, or even that they paid too much. The complaint does not say how much the Funds paid for the stocks at issue, or whether those stocks ever became worthless to the Funds. (Compl. ¶¶ 144-145, 51.) If this sort of pleading sufficed, every allegedly unprofitable expenditure could be challenged as a "waste."

## II.   ALL DIRECT CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS PLEAD DERIVATIVE, NOT DIRECT, INJURY.

According to plaintiffs, they were injured by the decline in publicly traded gambling business stock prices "because the value of their investments in the mutual funds is based on the net asset value of each mutual funds' portfolio." (Compl. ¶ 3.) In other words, plaintiffs allege that they were harmed only insofar as the Funds were harmed.[7] Plaintiffs' own allegations thus defeat plaintiffs' direct individual and class claims.

### A.   Plaintiffs' Individual and Class Claims Under RICO Must Be Dismissed Because Any Injury Is Derivative, Not Direct.

Even where an alleged RICO violation causes some cognizable RICO injury, if the injury is to the value of an entity's shares, the claim generally belongs to the entity, and may only be asserted derivatively on its behalf. "A shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock." *Manson* v. *Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993). Where shareholders bring a RICO claim alleging a "decrease in value of [their] shares," the "legal injury, if any, [is] to the firm." *Rand* v. *Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986). The shareholder's

---

[7]     As noted above, it is far from clear that plaintiffs were injured at all—even indirectly—by the 2006 "crackdown" on overseas gambling businesses. Plaintiffs do not allege any decrease in the prices of their mutual fund shares, and the Court can take judicial notice of the fact that those shares in fact increased in value during 2006. (European Index Fund Historical Prices; Global Equity Fund Historical Prices, attached as Exs. C-D to Shane Decl.)

injury is "derivative" and "not related directly to the defendant's injurious conduct."  *Manson*, 11 F.3d at 1131.

For example, in *Lakonia Management Ltd.* v. *Meriwether*, 106 F. Supp. 2d 540, 552 (S.D.N.Y. 2000), this court dismissed direct RICO claims of shareholders because "there is no allegation that plaintiff was treated any differently than any other shareholder."  *See also* *McKinney* v. *Moore*, No. 04 Civ. 07926 (RCC), 2007 WL 1149253, at *5 (S.D.N.Y. Apr. 16, 2007) (dismissing RICO claims of pension fund participant for lack of standing).  Rather, "under RICO an action to redress injuries to a corporation . . . must be brought in the name of the corporation."  *Rand*, 794 F.2d at 849 (quotation and citation omitted).  Because any RICO claim here is derivative, the direct RICO claims asserted in Counts I through IV must be dismissed.

**B.  Plaintiffs' Individual and Class Claims Under State Law Must Be Dismissed Because Any Injury Is Derivative, Not Direct.**

Similarly, plaintiffs' direct state law claims fail because any such claims are deriviative in nature.

Under Delaware law, whether a claim is direct or derivative depends "*solely* on the following questions:  (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"  *Tooley* v. *Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004) (emphasis in original).[8]  If the harm is to the corporation and the recovery would go to the corporation, the claim is derivative.  *Id.*  To pursue a direct action, plaintiffs must demonstrate that shareholders suffered an injury "'independent of

---

[8]  Because the Funds are statutory trusts created under Delaware law (Compl. ¶¶ 15-16), Delaware law determines whether the state law claims against them are direct or derivative.  *See* *Debussy LLC* v. *Deutsche Bank AG*, No. 05 Civ. 5550 (SHS), 2006 WL 800956, at *2 (S.D.N.Y. Mar. 29, 2006), *aff'd*, 242 F. App'x 735 (2d Cir. 2007).  The Second Circuit has applied Delaware law governing whether an action against a corporation is direct or derivative where the action is brought against a statutory trust.  *Debussy*, 242 F. App'x at 736.

any injury to the corporation.'"  *Id.* at 1038 (quoting *Parnes* v. *Bally Entm't Corp.*, 722 A.2d 1243, 1245 (Del. 1999)); *id.* at 1036 (to bring direct action, plaintiff must be able to "prevail without showing an injury to the corporation") (citation omitted).

### 1. Plaintiffs' Claims Are Derivative Under *Tooley*.

With respect to the first prong of *Tooley*, plaintiffs allege direct injury only to the Funds—a decline in the Funds' value due to investments in gambling companies.  Shareholders allegedly are harmed only by virtue of and in proportion to their share ownership.  Because plaintiffs cannot prevail without showing an injury to the Funds, the injury is not "independent of any alleged injury to the corporation," *Tooley*, 845 A.2d at 1039, and the claims are derivative.

Courts uniformly reach this conclusion where, as here, the injury alleged is a decrease in the value of shares held by shareholder-plaintiffs:  "Delaware courts have long recognized that actions charging 'mismanagement which depress[] the value of stock [allege] a wrong to the corporation; i.e., the stockholders collectively, to be enforced by a derivative action.'"  *Kramer* v. *W. Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988) (quoting *Bokat* v. *Getty Oil Co.*, 262 A.2d 246, 249 (Del. 1970)).  For example, in *Hogan* v. *Baker*, No. Civ. A. 305CV0073P, 2005 WL 1949476, at *4 (N.D. Tex. Aug. 12, 2005), investors directly sued the advisors of seventy Delaware mutual funds, on the theory that plaintiffs were injured directly because mutual funds "immediately" pass all gains and losses on to investors.  The court soundly rejected this argument because "if the only injury to an investor is the indirect harm which consists of the diminution in the value of his or her shares, the suit must be derivative."  *Id.*

Furthermore, plaintiffs here concede that all of the Funds' shareholders "were injured . . . in exactly the same way" as a result of their investment.  (Compl. ¶ 85(c).)  The "fact that an injury to the corporation tends to diminish each share of stock equally because corporate assets or their value are diminished" indicates an "indirect injury," not "independent or direct harm to the stockholders, individually."  *Tooley*, 845 A.2d at 1037.

- 14 -

The claims here also flunk the second prong of the *Tooley* test, which asks "who would receive the benefit of any recovery or other remedy." 845 A.2d at 1033. Any recovery or relief here would properly flow to the Funds and not to the Funds' shareholders directly. This conclusion "logically follow[s]," *id.* at 1036, from the analysis under *Tooley's* first prong because, under that analysis, the alleged misconduct is a wrong to the Funds. *See Kramer*, 546 A.2d at 353. The alleged misconduct therefore "never resulted in an event or transaction that could have injured the stockholders [here, the Funds' shareholders] directly, rather than indirectly as a result of their ownership of . . . shares," and "any monetary recovery . . . would properly belong to the corporation [here, the Funds], rather than to the stockholders [here, the Funds' shareholders] personally." *Dieterich* v. *Harrer*, 857 A.2d 1017, 1028 (Del. Ch. 2004).

### 2.    Plaintiffs' Attempts to Circumvent *Tooley* Fail.

Plaintiffs unsuccessfully try to plead around *Tooley* by asserting two "special" circumstances. First, plaintiffs claim that they were directly injured by "the payment . . . of commissions, fees and other compensation," and that these are "special injuries not belonging to the Vanguard Funds." (Compl. ¶¶ 115-116.) Second, plaintiffs allege that defendants violated fiduciary duties owed directly to shareholders. (Compl. ¶¶ 113-114, 119-120.) Even if true, neither circumstance would entitle plaintiffs to assert direct claims.

In *Tooley* itself, the Delaware Supreme Court "disapprove[d] the use of the concept of 'special injury' as a tool in [the direct/derivative] analysis." *Tooley*, 845 A.2d at 1035 Applying Delaware law, this Court has squarely rejected attempts to circumvent *Tooley* based on

direct payment of mutual fund fees.[9]  It is telling that plaintiffs here never even say what fees or other compensation allegedly caused them special injury.  Regardless, however, their attempt to characterize fees as "special injuries" does not save their direct claims from dismissal.

Similarly, even if the Trustees owe Fund shareholders a duty separate from the duty to the Funds, the claims remain derivative.  Under *Tooley*, the plaintiff "must demonstrate that the duty breached was owed to the [plaintiff] *and that he or she can prevail without showing an injury to the corporation*."  845 A.2d at 1039 (emphasis added).  Plaintiffs' pleading is all about alleged conduct toward the Funds and alleged injury to the Funds.  The "duty implicated . . . is the 'normal duty to manage the affairs of the [Funds]. . . . That duty is owed to the [Funds] and not separately or independently to the [Funds' shareholders].'"  *Debussy*, 2006 WL 800956, at *3 (quoting *Dieterich*, 857 A.2d at 1027).  Accordingly, plaintiffs' direct state law claims (Counts V and VI) must be dismissed.

---

[9]      For example, in *In re Evergreen Mutual Funds Fee Litigation*, plaintiffs attempted to bring a direct action against mutual funds by alleging that the "distribution and management fees at issue . . . were borne directly by shareholders," and that the shareholders therefore suffered an injury independent of the corporation.  423 F. Supp. 2d 249, 261 (S.D.N.Y. 2006).  The court dismissed the claims as derivative, holding that the "alleged financial harm" of paying improper fees does not "harm[] the individual investor independently of the harm to the Funds."  *Id*. Instead, "'a pro rata bearing of expenses by individual shareholders seems to fall within the very essence of an injury which is not independent from that suffered by the corporation.'"  *Id*. (quoting *In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04 Civ. 2567 (NRB), 2006 WL 126772, at *6 (S.D.N.Y. Jan. 17, 2006)).  Likewise, in *Goldman Sachs*, the court found that payment of allegedly improper mutual fund fees supported only a derivative, and not a direct action; plaintiffs had alleged "an injury (excess fees) which was actually incurred by the Funds, thus rendering plaintiffs' injuries dependent upon those suffered by the Funds."  2006 WL 126772, at *7 n.16.  In other words, "the alleged injury to plaintiffs occurred only secondarily and as a function of and in proportion to their pro rata investment in the Funds."  *Id*. at *6 (quotation and citation omitted).

## III.   ALL DERIVATIVE CLAIMS MUST BE DISMISSED FOR FAILURE TO COMPLY WITH STATUTORY DEMAND AND CONTEMPORANEOUS OWNERSHIP REQUIREMENTS.

Under Delaware law, a plaintiff may only bring a derivative action against a statutory trust if "if trustees with authority to do so have refused to bring the action or if an effort to cause those trustees to bring the action is not likely to succeed."  Del. Code Ann. tit. 12, § 3816(a).[10]  The reasons for any asserted demand futility must be "set forth with particularity." *Id*. § 3816(c).

There are two tests for establishing demand futility under Delaware law:  the *Aronson* test, which applies when "the directors made a conscious business decision in breach of their fiduciary duties," and the *Rales* test, which applies "where the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties." *Wood* v. *Baum*, 953 A.2d 136, 140 (Del. 2008) (citing *Aronson* v. *Lewis*, 473 A.2d 805, 814 (Del. 1984), and *Rales* v. *Blasband*, 634 A.2d 927, 934 (Del. 1993)); *see In re Morgan Stanley Derivative Litig.*, 542 F. Supp. 2d 317, 321-22 (S.D.N.Y. 2008).  Both tests inquire into whether there is reason to doubt the disinterestedness of a board in its evaluation of the prospective claim. The *Rales* test best applies here, because the complaint makes no allegations concerning a specific board decision, but suggests instead that the Trustees passively "allowed one or more of the Vanguard Funds to invest or continue their respective investments in illegal gambling businesses."  (Compl. ¶ 22.)  Under either *Rales* or *Aronson*, however, the Trustees here are entitled to a strong statutory presumption of independence and disinterestedness for all purposes, Del. Code Ann. tit. 12, § 3801(d), which the allegations fail to overcome.

---

[10]     Delaware law determines whether the pleading requirements for demand futility are satisfied as to state and federal claims.  *Scalisi* v. *Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004) ("The substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief.").

A.     **The Complaint Does Not Plead Demand Futility Under *Rales*.**

The demand requirement is critical in *Rales*-type cases, where the board is sued

for failure to take certain action:  "requiring demand in such circumstances is consistent with the

board's managerial prerogatives because it permits the board to have the opportunity to take

action where it has not previously considered doing so."  *Rales*, 634 A.2d at 934 n.9.  Under

*Rales*, a plaintiff who does not make a demand must make "particularized factual allegations"

that "create a reasonable doubt that, as of the time the complaint is filed, the board of directors

could have properly exercised its independent and disinterested business judgment in responding

to a demand."  *Id.* at 934.  Establishing "reasonable doubt" is "a difficult feat under Delaware

law" because of the "stringent requirements" imposed by this heightened pleading standard.

*Ryan* v. *Gifford*, 918 A.2d 341, 352 n.23 (Del. Ch. 2007) (quotation and citation omitted).

Plaintiffs do not come close to satisfying this heavy pleading burden.  Under

Delaware law, a trustee of a statutory trust registered as an investment company is "independent

and disinterested for all purposes" if he or she satisfies the statutory definition of an

"[i]ndependent trustee."  Del. Code Ann. tit. 12, § 3801(d).  An "[i]ndependent trustee" is one

"who is not an 'interested person' . . . of the statutory trust" as defined in the Investment

Company Act of 1940 ("ICA"), 15 U.S.C. §§ 80a-1 et seq. (2000).  Del. Code Ann. tit. 12, §

3801(d).  The complaint here does not allege that any of the Trustees is not "independent" or is

"interested" within the meaning of these statutes.[11]  Accordingly, the Trustees must be treated as

independent and disinterested for purposes of the statutory presumption of disinterestedness.  *Id.*

---

[11]     Generally a person may be "interested" by being a "director" or "employee" of an entity,
but under the Investment Company Act in particular, "no person shall be deemed to be an
interested person . . . solely by reason of . . . his being a member of its board of directors or
advisory board or an owner of its securities."  15 U.S.C. § 80a-2(a)(19)(A).

Despite the clear requirements of the statute, plaintiffs claim demand futility in a conclusory fashion, without further factual allegation or support, based on four broad generalizations:  (i) granting the demand would "require the Trustees to cause the Funds to sue . . . . the Trustees" (Compl. ¶ 68); (ii) granting the demand would "require the Trustees to cause the Funds to sue Vanguard," which allegedly selects the Trustees, thereby creating "conflicts of interest" (Compl. ¶ 68); (iii) the Trustees allegedly "face a substantial threat of personal civil and criminal liability" (Compl. ¶ 74); and (iv) "the Trustees also serve on the boards of other investment companies, that are not parties to this case, that own an interest in Vanguard."  (Compl. ¶ 73.)  Even if true, these generalizations would be irrelevant because under the governing statute, they do not turn the Trustees into "'interested person[s]' . . . of the statutory trust[s]."  Del. Code Ann. tit. 12, § 3801(d).  In any event, because these same excuses could be and are presented in nearly every case outside the statutory trust context, courts repeatedly have had occasion to reject them.

### Demand is not excused whenever Trustees might have to sue themselves.

"[T]he mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors."  *Aronson*, 473 A.2d at 815; *see Spiegel* v. *Buntrock*, 571 A.2d 767, 774 (Del. 1990).  Were the rule otherwise, any plaintiff would be able to "bootstrap allegations of futility" by merely claiming that "the directors participated in the challenged transaction or that they would be reluctant to sue themselves."  *Blasband* v. *Rales*, 971 F.2d 1034, 1049 (3rd Cir. 1992) (citing Delaware law).  Here, generalizations about the Trustees' alleged reluctance to sue themselves also would not explain why they would have refused a demand to bring this action—had it any merit—against the Funds' outside investment advisors.  (Compl. ¶¶ 25, 27, 29.)  Plaintiffs allege nothing more than a business relationship between the Trustees and the outside advisors.  "Demand is not excused . . . just because directors would have to sue their . . . business associates."  *In re Walt*

- 19 -

*Disney Co. Derivative Litig.*, 731 A.2d 342, 354 n.18 (Del. Ch. 1998) (quotation and citation omitted).

> ### Demand is not excused just because the Trustees have relationships with Vanguard.

Likewise, Vanguard's alleged role in selecting the Trustees does not vitiate disinterest or independence.  "It is the care, attention and sense of individual responsibility to the performance of one's duties, not the method of election, that generally touches on independence."  *Aronson*, 473 A.2d at 816; *see also Andreae* v. *Andreae*, Civ. A. No. 11905, 1992 WL 43924, at *5 (Del. Ch. Mar. 3, 1992, revised Mar. 5, 1992).  A plaintiff must allege facts to demonstrate the absence of "independent business judgment in decision-making"; a "conclusory allegation of domination" will not suffice.  *Id.; see Loveman* v. *Lauder*, 484 F. Supp. 2d 259, 269 (S.D.N.Y. 2007) (applying Delaware law).  *See also In re IAC/InterActiveCorp Secs. Litig.*, 478 F. Supp. 2d 574, 602 (S.D.N.Y. 2007) ("Any argument that the directors were 'nominated by or elected at the behest' of the controlling person adds nothing.") (quoting *Aronson*, 473 A.2d at 816).  Here, plaintiffs have alleged *nothing* to suggest that any Trustee had or has an interest that interferes with his or her discharge of duty.

> ### Demand is not excused by allegations about potential exposure to civil and criminal liability.

Plaintiffs' conclusory allegation that the Trustees face "a substantial threat of personal civil and criminal liability" (Compl. ¶ 74) does not make out a disabling self-interest.  Under *Aronson*, interestedness may be found in "rare" and "egregious" cases where "a substantial likelihood of . . . liability . . . exists."  *Aronson*, 473 A.2d at 815.  However, a generalized allegation that a director faces potential criminal or civil liability based on the same facts alleged in a complaint does not satisfy this standard.

For example, in *Seminaris* v. *Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995), the Delaware Chancery Court considered allegations that directors were interested because of a "threat of liability in . . . related federal lawsuits" and a "threat of criminal sanctions by the

SEC." The court held that such allegations do not establish interestedness because "the threat of liability in the related actions" does not have "a greater impact on the directors' discretion than the threat of liability in [the] derivative action." *Id.* Rather, allegations of potential liability in related actions are simply "a slightly altered version of the discredited refrain—'you can't expect directors to sue themselves.'" *Id.* (citation omitted). Even where—unlike here—collateral actions have actually been filed, courts have rejected assertions that potential liability in such actions renders a director interested. *E.g. In re NYFIX, Inc.*, 567 F. Supp. 2d 306, 315 (D. Conn. 2008) (potential liability in parallel state court action insufficient to establish interestedness); *Rattner* v. *Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *14 (Del. Ch. Sept. 30, 2003) (potential liability in securities class action lawsuits insufficient to establish interestedness). Rather, to excuse demand, a complaint must plead a "substantial likelihood of personal liability" with particularity. *Wood*, 953 A.2d at 141 n.11.

Plaintiffs have not nearly satisfied this standard. Plaintiffs have not pled a substantial likelihood of RICO liability for anyone, let alone for the Trustees. (*See supra* Point I.A.) The complaint *admits* that any "crackdown" happened years ago, and had nothing to do with any Trustees, the Funds, or any other defendant here. (Compl. ¶ 51.) Again, just because plaintiffs belatedly concocted a RICO claim against the Trustees does not mean that the Trustees cannot assess the claim impartially.[12]

Plaintiffs also have not pled a substantial likelihood of any other civil liability sufficient to overcome the Trustees' disinterestedness. As discussed above (*supra* Point I.B.,C.), the Funds' declarations of trust and Delaware law provide the Trustees with substantial protection against claims of the sort asserted here. "Where directors are contractually or

---

[12]     Even if the complaint adequately alleged a RICO claim under Rule 8's notice pleading standard, those allegations are not sufficiently particularized to plead demand futility. *Wood*, 953 A.2d at 140.

otherwise exculpated from liability for certain conduct, then a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts." *Wood*, 953 A.2d at 141 (emphasis in original) (quotation omitted); *In re Baxter Int'l., Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995) (same). Because plaintiffs plead no actionable claim against the Trustees, plaintiffs cannot rely on their own pleading to impugn the Trustees' disinterestedness.

> ***Demand is not excused because of the Trustees' alleged service on other boards***.
Finally, plaintiffs' vague allegation that "the Trustees also serve on the boards of other investment companies . . . that own an interest in Vanguard" (Compl. ¶ 73) does not change the analysis. Under Delaware law, such an allegation is irrelevant to interestedness and independence: "the receipt of compensation for service as an independent trustee of [a] statutory trust and also for service as an independent trustee of one or more other investment companies managed by a single investment adviser . . . shall not affect the status of a trustee as an independent trustee under this chapter." Del. Code Ann. tit. 12, § 3801(d). In any event, the complaint provides no details about any such service, or about any interests allegedly arising out of it. The allegation falls far short of the requirement to plead demand futility "with particularity." *Id.* § 3816(c); *see Wood*, 953 A.2d at 140.

> **B.    The Complaint Does Not Plead Demand Futility Under *Aronson*.**

Plaintiffs' purported excuses would fail the *Aronson* demand futility test as well. Under *Aronson*, a plaintiff must "allege particularized facts creating a reason to doubt that '(1) the directors are disinterested and independent [or that] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.'" *Wood*, 953 A.2d at 140 (quoting *Aronson*, 473 A.2d at 814). The complaint fails the first prong of the test for the same reasons that it fails the *Rales* test. The complaint fails the second prong because, as discussed above, it does not even allege a "challenged transaction," much less a reason to disbelieve that

- 22 -

the transaction was a valid exercise of business judgment.  *See Aronson*, 473 A.2d at 813 ("the business judgment rule operates only in the context of director action" and "has no role where directors have either abdicated their functions, or absent a conscious decision, failed to act").[13] The complaint thus fails under both prongs of *Aronson*'s demand futility test.

### C.    The Complaint Does Not Satisfy the Contemporaneous Ownership Rule.

Federal Rule of Civil Procedure 23.1 requires a derivative plaintiff to "allege that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains."  Indeed, the Second Circuit applies Rule 23.1 to require both that plaintiff "must have acquired his or her stock in the corporation before the core of the allegedly wrongful conduct transpired" and "must have owned stock in the corporation *throughout* the course of the activities that constitute the *primary basis* of the complaint."  *In re Bank of N.Y.  Derivative Litig.*, 320 F.3d 291, 298 (2d Cir. 2003) (emphasis in original).  Delaware law is similarly restrictive.  *See* Del. Code Ann. tit. 12, § 3816(b); *see also Desimone* v. *Barrows*, 924 A.2d 908, 924-27 (Del. Ch. 2007); *Newkirk* v. *W.J. Rainey, Inc.*, 76 A.2d 121, 123-24 (Del. Ch. 1950). [14]

Here, the complaint alleges that plaintiff Deanna McBrearty first purchased shares in the European Index Fund "on or about May 20, 2005," and that Marylynn Hartsel first

---

[13]    Under Delaware law, business judgment denotes "the exercise of substantive due care," regarding the "terms of the transaction," and "procedural due care" in reaching an "informed decision."  *RCM Sec. Fund, Inc.,* v. *Stanton*, 928 F.2d 1318, 1331 (2d Cir. 1991) (citing *Grobow* v. *Perot*, 539 A.2d 180, 189 (Del. 1998)).  Here, plaintiffs have alleged *nothing* about the terms of the investments or the processes through which investments were made.  *See, e.g., Halpert Enters., Inc.* v. *Harrison*, 362 F. Supp. 2d 426, 432-33 (S.D.N.Y. 2005); *In re Baxter Int'l*, 654 A.2d at 1271.

[14]    As to their federal RICO claims, plaintiffs must satisfy Rule 23.1, though its "interstices" may "incorporate" state law in certain circumstances.  *Kamen* v. *Kemper Fin. Servs.*, 500 U.S. 90, 97-98 (1991).  As to plaintiffs' state law claims, federal law applies if the contemporaneous ownership rule is procedural, and state law applies if it is substantive.  17A James W. Moore et al., *Moore's Federal Practice* § 124.01[4] (3d ed. 2007) ("*Erie* principles . . . apply to pendent state claims litigated in federal courts.").  The Court need not decide whether federal or state law applies because under either rule, plaintiffs have not alleged contemporaneous ownership.

purchased shares in the Global Equity Fund "prior to July 1, 2006."  (Compl. ¶¶ 11, 13.)

Plaintiffs completely fail to allege the date or dates of the "transaction of which the stockholder

complains"—the purchase of stock in gambling companies.  (*See* Compl. ¶¶ 37-39, 46-48.)  At

most, the complaint suggests that the Funds purchased these stocks some time prior to the 2006

government "crackdown" "beginning in 2006."  (Compl. ¶¶ 1, 51.)  Nowhere do plaintiffs allege

that they were shareholders in the Funds when the Funds purchased the stocks.  Accordingly,

plaintiffs have failed to satisfy the requirements for contemporaneous ownership.  For failure to

allege properly demand futility and contemporaneous ownership, all purported derivative claims

(Counts VII through XIII) must be dismissed.

## IV.	THE COURT SHOULD DISMISS THIS ACTION WITH PREJUDICE AND WITHOUT LEAVE TO AMEND.

A court will dismiss a complaint with prejudice where "repleading would be

'futile.'"  *In re AOL Time Warner, Inc. Secs. and "ERISA" Litig.*, 381 F. Supp. 2d 192, 248

(S.D.N.Y 2004).  Here, repleading would be futile for the reasons set forth above and in the

Vanguard Memorandum.

## CONCLUSION

For the foregoing reasons, the Trustee and Fund Defendants respectfully request

that the Court dismiss this action in its entirety with prejudice and without leave to amend.

Dated: October 27, 2008
      New York, New York

David H. Braff  (DB-0761)
Penny Shane  (PS-0185)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone:  212-558-4000
Facsimile:  212-558-3588
Email:  braffd@sullcrom.com
*Counsel for the Trustee and Fund
Defendants*