UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| Deanna McBrearty and Marylynn Hartsel, individually, derivatively and on behalf of all others similarly situated, | 08 CV 7650 (DLC) |
| | ECF Case |
| Plaintiffs, | |
| -against- | |
| The Vanguard Group, Inc., George U. Sauter, Duane F. Kelly, John J. Brennan, Charles D. Ellis, Rajiv L. Gupta, Amy Gutmann, JoAnn Heffernan Heisen, Andre F. Perold, Alfred M. Rankin, Jr., J. Lawrence Wilson, Acadian Asset Management, LLC, Ronald D. Frashure, John R. Chisholm, Brian K. Wolahan, AllianceBernstein LP, Henry S. D'Auria, Sharon E. Fay, Kevin F. Simms, Marathon Asset Management, LLP, William J. Arah, Jeremy H. Hosking, and Neil M. Ostrer, | |
| Defendants, | |
| -and- | |
| Vanguard International Equity Index Funds, d/b/a Vanguard European Stock Index Fund, and Vanguard Horizon Funds, d/b/a Vanguard Global Equity Fund, | |
| Nominal Defendants. | |

**Memorandum of Points and Authorities
in Support of Vanguard Defendants' Motion to Dismiss**

QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
(213) 443-3000

*Attorneys for Defendants The Vanguard
Group, Inc., George U. Sauter, and Duane
F. Kelly*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ALLEGATIONS OF THE COMPLAINT ............................................................... 4

ARGUMENT ........................................................................................................... 5

I.  PLAINTIFFS CANNOT STATE A CLAIM UNDER RICO BECAUSE THEY
    WERE NOT INJURED "BY REASON OF" THE ALLEGED RICO
    VIOLATIONS, AND THUS LACK RICO STANDING ................................... 5

    A.  Plaintiffs' Allegations Establish That Their Damages Arise from the
        Alleged Intervention of Federal Regulators, and Not from the Investments
        in European Gambling Companies ...................................................... 7

    B.  Plaintiffs' Allegations Also Establish That They Were Not Targets or
        Victims of the Alleged RICO Violations .......................................... 10

II. PLAINTIFFS FAIL TO PLEAD ANY RICO PREDICATE ACTS .............................. 13

III. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS'
     CLAIMS ARE DERIVATIVE, AND PLAINTIFFS HAVE FAILED TO PLEAD
     DEMAND FUTILITY AND CONTEMPORANEOUS OWNERSHIP ........................ 16

IV. THE COURT SHOULD NOT GRANT PLAINTIFFS LEAVE TO AMEND THE
    COMPLAINT BECAUSE AMENDMENT WOULD BE FUTILE .............................. 17

CONCLUSION ...................................................................................................... 20

i

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
 493 F.3d 87 (2d Cir. 2007)........................................................................ 14

*Abrahams v. Young & Rubicam, Inc.*,
 79 F.3d 234 (2d Cir. 1996)........................................................................ 8

*Achtman v. Kirby, McInerney & Squire, LLP*,
 464 F.3d 328 (2d Cir. 2006)...................................................................... 6

*In re American Express Company Shareholder Litigation*,
 39 F.3d 395 (2d Cir. 1994).................................................6, 7, 8, 10, 11, 12, 16, 18

*Anza v. Ideal Steel Supply Corp.*,
 547 U.S. 451 (2006)...............................................................6, 7, 9, 11, 12

*In re Bank of New York Derivative Litig.*,
 320 F.3d 291 (2d Cir. 2003)...................................................................... 16

*Baron v. Complete Management, Inc.*,
 260 Fed. Appx. 399 (2d Cir. 2008)............................................................ 18

*Beck v. Prupis*,
 529 U.S. 494 (2000)................................................................................... 1

*Bell Atlantic Corp. v. Twombly*,
 127 S. Ct. 1955 (2007)........................................................................14, 18

*Bellikoff v. Eaton Vance Corp.*,
 481 F.3d 110 (2d Cir. 2007)...................................................................... 17

*Carnegie-Mellon Univ. v. Cohill*,
 484 U.S. 343 (1988).................................................................................. 19

*In re Crazy Eddie Sec. Litig.*,
 714 F. Supp. 1285 (E.D.N.Y. 1989)........................................................... 9

*Denney v. Deutsche Bank AG*,
 443 F.3d 253 (2d Cir. 2006)...................................................................... 5

*Discon, Inc. v. NYNEX Corp.*,
 93 F.3d 1055 (2d Cir. 1996)...................................................................... 16

*Duphily v. Delaware Elec. Co-op., Inc.*,
 662 A.2d 821 (Del. 1995) ......................................................................... 13

*Hayden v. County of Nassau*,
 180 F.3d 42 (2d Cir. 1999)........................................................................ 17

*Hecht v. Commerce Clearing House, Inc.,*
   897 F.2d 21 (2d Cir. 1990) .................................................................. 6, 8

*Hollander v. Flash Dancers Topless Club,*
   173 Fed. Appx. 15 (2d Cir. 2006) ............................................................ 18

*Holmes v. Securities Investor Protection Corp.,*
   503 U.S. 258 (1992).................................................................... 6, 7, 9

*Kolari v. New York-Presbyterian Hosp.,*
   455 F.3d 118 (2d Cir. 2006).................................................................. 19

*Lerner v. Fleet Bank, N.A.,*
   318 F.3d 113 (2d Cir. 2003)............................................................. 11, 12

*Manson v. Stacescu,*
   11 F.3d 1127 (2d Cir. 1993).................................................................. 16

*In re Mastercard Int'l, Inc. Internet Gambling Litig.,*
   132 F. Supp. 2d 468 (E.D. La. 2001) ......................................................... 13

*Pani v. Empire Blue Cross Blue Shield,*
   152 F.3d 67 (2d Cir. 1998)................................................................... 17

*Ritchie Capital Management LLC v. Coventry First LLC,*
   No. 07-CV-3494 (DLC), 2008 WL 542596 (S.D.N.Y. Feb. 29, 2008)............................... 2, 8

*Sperber v. Boesky,*
   849 F.2d 60 (2d Cir. 1988)............................................................. 11, 12

*United States v. Bala,*
   489 F.3d 334 (8th Cir. 2007)................................................................. 13

*United States v. Bridges,*
   493 F.2d 918 (9th Cir. 1974)................................................................. 15

*Walzer v. UAL Corp,*
   No. 05-CV-0581, 2008 WL 87944 (S.D.N.Y. Jan. 2, 2008) ...................................... 18

## Statutes

18 U.S.C. § 1955 ....................................................................passim

18 U.S.C. § 1962(c) ...................................................................... 16

18 U.S.C. § 1962(d) ...................................................................... 16

18 U.S.C. § 1964(c)........................................................................ 5

28 U.S.C. § 1367(c)(3) ................................................................... 19

Fed. R. Civ. P. 8 ........................................................................ 13

**<u>Other Authorities</u>**

H.R. Rep. 91-1549, 91st Cong. 2d Sess., 2 U.S. Code Cong. & Admin. News (1970) ............... 15

Pub. L. No. 91-452, 84 Stat. 922, 922 (1970)........................................................................ 10

**Preliminary Statement**

The premise of this civil Racketeer Influenced & Corrupt Organizations Act (RICO) suit is a novel and misguided one:  plaintiffs claim the trustees and investment professionals of two Vanguard mutual funds (including one index fund that invests in stocks selected by an independent third party) conspired to turn those funds into racketeering enterprises by causing them to invest in publicly traded European companies in the gambling industry.  Plaintiffs, shareholders in the two funds, allege that the value of their shares decreased when the U.S. government changed its enforcement policies with respect to on-line gambling companies.  *See* Complaint ¶¶ 1, 51.  Plaintiffs do not allege that they were misled about these investments.  Instead, they posit that any investment in such companies– by any U.S. investor – was a violation of a federal statute that criminalizes the conduct, finance, management, supervision, direction, or ownership of illegal gambling businesses, and that the funds' series of investments constitutes a pattern of racketeering activity in violation of RICO.

It is difficult to imagine claims further removed from the goals of RICO.  *See Beck v. Prupis*, 529 U.S. 494, 496 (2000) ("Congress enacted RICO . . . for the purpose of seeking the eradication of organized crime in the United States.") (citations omitted).  Plaintiffs' complaint is nonsensical; a mutual fund's investment in legitimate, publicly traded, foreign companies can hardly be equated with masterminding illegal gambling operations in the United States.  Under plaintiffs' theory, every one of the thousands or hundreds of thousands of U.S. investors who owns even a single share of a publicly traded overseas gambling company is a criminal.

Not surprisingly, the complaint is legally defective as well.  First, plaintiffs' own allegations establish that their injury – the diminution of the value of the funds – was not caused "by reason of" the alleged predicate acts, an essential requirement for RICO standing.  The complaint asserts that the funds' investments in gambling companies lost value because the

1

federal government changed its enforcement policy.  There can be neither RICO injury nor

RICO standing (a) where the alleged injury is not the direct result of the alleged predicate acts,

but rather of the exposure or interruption of the predicate acts by some third party; or (b) where

the plaintiffs were not the intended victims of the predicate acts, and their alleged injury was

merely a collateral result.  This Court recently applied these principles to analogous facts,

dismissing shareholders' RICO complaint where a regulator's interruption of the company's

alleged RICO scheme, not the predicate acts themselves, diminished the value of the company.

*Ritchie Capital Management LLC v. Coventry First LLC*, No. 07-CV-3494 (DLC), 2008 WL

542596 at \*6 (S.D.N.Y. Feb. 29, 2008).

Second, plaintiffs have not sufficiently alleged the predicate acts on which their RICO

claims are based.  Although they assert that the defendants caused the funds to violate 18 U.S.C.

§ 1955, which prohibits ownership of "an illegal gambling business," the complaint does not

identify the specific "illegal gambling business" the funds are alleged to have owned.  Without

such basic factual pleading, the complaint is legally deficient.  Moreover, 18 U.S.C.

§ 1955(b)(1)(i) defines an illegal gambling business as one operated in "violation of the law of a

State or political subdivision in which it is conducted."  Plaintiffs have not identified the state or

local laws that the gambling companies allegedly violated, and without that their allegations that

defendants violated Section 1955 are necessarily insufficient.

Even were plaintiffs to provide more detail about their claims, plaintiffs could not assert a

valid claim that the defendants caused violations of 18 U.S.C. § 1955.  Plaintiffs indicated, in the

stipulation of dismissal of the AllianceBernstein defendants, that the alleged "illegal gambling

operations" that are the subject of the complaint are four publicly traded companies based in

Europe.[1]  There is no legal basis for plaintiffs' implicit assertion that Section 1955 criminalizes the ownership of shares, purchased on a public stock exchange, of lawful and legitimate companies.  If plaintiffs' interpretation of the statute were adopted, numerous American investors would unwittingly be violating a federal criminal statute.

Finally, as demonstrated in the motion filed by the Trustee and Fund Defendants, plaintiffs lack standing to bring claims under RICO and under state law because their claims are derivative and they have not made a demand on the Trustees nor adequately pleaded demand futility.  The complaint asserts injury derived from diminution in value of the funds' investments, which in turn diminished the value of the funds for all of their shareholders.  Such claims are necessarily derivative, not individual, in nature.  All of the purported direct/class claims should therefore be dismissed.  All of the derivative claims should be dismissed as well because plaintiffs have failed to make a demand on the funds' trustees and have not adequately pleaded demand futility.  The Vanguard Defendants join in the Trustee and Fund Defendants' motion in all respects.

For these reasons, all of plaintiffs' claims should be dismissed for failure to state a claim.  The very allegations in the complaint, moreover, show that plaintiffs cannot correct these pleading deficiencies.  Accordingly, defendants respectfully request that the Court grant their motion to dismiss with prejudice and without leave to amend.

---

[1]  The stipulation lists the alleged "subject gambling businesses" as Party Gaming PLC, Sportingbet PLC, BWin Interactive Entertainment AG, and NETeller PLC.  *See* Request for Judicial Notice, Ex. A (Stipulation and Proposed Order of Voluntary Dismissal as to AllianceBernstein Defendants, dated Oct. 7, 2008).  All four are publicly traded companies based in Europe.  *See* Request for Judicial Notice, Exs. B, C, D & E.

## Allegations of the Complaint[2]

The Vanguard Group, Inc. ("Vanguard") is an investment management company that manages, among other clients, a number of open-end investment companies, known more commonly as "mutual funds," registered with the Securities and Exchange Commission under the Investment Company Act of 1940. *See* Verified Class Action and Derivative Complaint ("Compl.") ¶ 17. George U. Sauter ("Sauter") is the Chief Investment Officer and Managing Director of Vanguard. Compl. ¶ 19. Duane F. Kelly ("Kelly") is a portfolio manager at Vanguard. *Id.* ¶ 20. Collectively, Vanguard, Sauter, and Kelly are referred to herein as the Vanguard Defendants. Plaintiffs are shareholders in two mutual funds managed by Vanguard, the Vanguard European Stock Index Fund and the Vanguard Global Equity Fund (the "Funds"). *Id.* ¶ 2. The Funds are statutory trusts organized under the laws of Delaware. *Id.* ¶¶ 15-16. The Funds are overseen by a Board of Trustees (the "Trustees"), which is the same for every Vanguard fund. *See id.* ¶ 22. Investment decisions for the Funds are made by investment advisors, subject to the supervision and oversight of Vanguard, the Trustees, and the officers of the Funds. The investment advisor for the Vanguard European Stock Index Fund is alleged to be a division of Vanguard known as the Vanguard Quantitative Equity Group. *Id.* ¶ 18. The investment advisors for the Vanguard Global Equity Fund are alleged to be Acadian Asset Management, LLC, AllianceBernstein LP, and Marathon Asset Management LLP. *Id.* ¶¶ 25-30.

Plaintiffs allege that defendants caused the Funds to invest in shares of "illegal gambling businesses" sometime during or before 2006. *Id.* ¶ 1. Plaintiffs allege that by merely purchasing publicly traded shares, defendants violated a criminal law, 18 U.S.C. § 1955, which imposes

---

[2] The Vanguard Defendants assume the truth of the complaint's allegations for the purposes of this motion only.

criminal liability on anyone who "conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business." *Id.* ¶¶ 37, 45.  The Complaint does not specify what companies are allegedly involved, nor does it identify what laws the unidentified companies allegedly violated.  *See id.* ¶ 48.  Plaintiffs have indicated, in a stipulation dismissing the AllianceBernstein Defendants, that the alleged "subject gambling businesses" were Party Gaming PLC, Sportingbet PLC, BWin Interactive Entertainment AG, and NETeller PLC.  *See* Request for Judicial Notice, Ex. A (Stipulation and Proposed Order of Voluntary Dismissal as to AllianceBernstein Defendants, dated Oct. 7, 2008).  All four companies are publicly traded companies based in Europe and listed on European exchanges: Party Gaming (PRTY), Sportingbet (SBT), and NETeller (NLR) are listed on the London Stock Exchange, and BWin Interactive (BWIN) is listed on the Vienna Stock Exchange.  *See* Request for Judicial Notice, Exs. B, C, D & E.  Plaintiffs allege that they were injured when the shares in these gambling businesses declined in value as a result of a government crackdown against "illegal gambling businesses" in 2006, causing the Funds to decline in value.  Compl. ¶¶ 1, 51.

## Argument

### I.   PLAINTIFFS CANNOT STATE A CLAIM UNDER RICO BECAUSE THEY WERE NOT INJURED "BY REASON OF" THE ALLEGED RICO VIOLATIONS, AND THUS LACK RICO STANDING

A plaintiff only has standing to bring a claim under RICO if he or she is "injured in his business or property *by reason of* a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c) (emphasis added); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("A RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the RICO violation.") (internal quotations omitted).  "But-for" causation is not sufficient; plaintiffs must also show that their

alleged injuries were proximately caused by the alleged racketeering activity. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *see also Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 265-68 (1992) (same).

Plaintiffs' allegations do not satisfy this essential requirement – in fact they negate it. Plaintiffs do not base their RICO claims on losses they suffered as a result of the predicate act, but on losses that the enterprise suffered when the profitable predicate act was disrupted by a third party. Courts have consistently held that such claims are defective, because (a) the injury complained of is not an injury inflicted on the victims of the predicate acts, but rather results from the intervention of a third party who disrupts those acts; and (b) the plaintiffs were not the intended victims of the predicate acts but instead were affected by subsequent or collateral events. The Court may, and should, disregard plaintiffs' conclusory allegations[3] of RICO injury and should dismiss the complaint with prejudice.

---

[3] Plaintiffs allege in conclusory fashion that their injuries "were proximately caused by Defendants' racketeering activities and overt acts taken in furtherance of Defendants' racketeering conspiracy." Compl. ¶ 57. They add that "Plaintiffs' injuries were the foreseeable, direct and natural consequence of unlawful investments in illegal gambling businesses." *Id.* ¶ 58. The court may disregard these legal conclusions, as they are not supported (and, indeed, are refuted) by plaintiffs' factual allegations. *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) ("[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.") (internal quotations omitted); *In re American Express Company Shareholder Litigation*, 39 F.3d 395, 400 n.3 (2d Cir. 1994) (disregarding similar allegations in a RICO case because "these conclusory allegations of the legal status of the defendants' acts need not be accepted as true for purposes of ruling on a motion to dismiss") (citations omitted).

## A.     Plaintiffs' Allegations Establish That Their Damages Arise from the Alleged Intervention of Federal Regulators, and Not from the Investments in European Gambling Companies

The direct cause of plaintiffs' alleged injuries, by their own allegations, was the alleged government "crackdown" on illegal gambling businesses in 2006, which caused shares in gambling companies to drop.  Compl. ¶ 51.  This intervening act by the government, and not defendants' alleged racketeering activity, is the direct cause of plaintiffs' injuries, and plaintiffs therefore lack standing to bring claims under RICO.[4]

The United States Supreme Court has held that strict enforcement of the RICO proximate cause requirement is necessary to prevent RICO cases from becoming indeterminate attempts to allocate the causes of damages and from diffusing deterrence of the predicate acts by permitting civil suits by persons indirectly affected where the true victims could bring claims themselves. *Anza*, 547 U.S. at 458-60; *Holmes*, 503 U.S. at 269-70.  These principles are directly implicated where the alleged injury does not stem from the predicate acts, but from some more remote consequence of those acts.  Accordingly, there is no standing to bring RICO claims where plaintiffs' injuries are alleged to result from the exposure or interruption of the RICO scheme by a third party, such as the government.  *See, e.g.*, *In re American Express Company Shareholder Litigation*, 39 F.3d 395, 400 (2d Cir. 1994) (dismissing RICO claims for lack of standing where "any losses to American Express were caused only because the scheme itself was exposed and thus failed").

_____

[4]   Although the Vanguard Defendants have accepted for purposes of this motion that plaintiffs suffered some indirect injury, the Trustees' Memorandum shows that the share prices of both Funds actually rose during 2006, and plaintiffs apparently suffered no losses at all at least through the end of 2006.  (Trustees' Memorandum at 5 n.3.)   Thus, plaintiffs were likely not injured, even indirectly, as a result of the 2006 "crackdown."

Here, plaintiffs have alleged that the direct cause of their injuries was the government exposure and indictment of the gambling companies.  Compl. ¶¶ 1, 51.  In particular, plaintiffs state that they were injured when the government began "arresting principals of the gambling enterprises during a law enforcement crackdown beginning in 2006." *Id.* ¶ 1.  They further allege that "[i]n or about 2006, federal and state law enforcement agencies began a crackdown on illegal gambling businesses such as those in which Defendants had caused the Vanguard Funds to invest.  *As a result*, the stock prices of all such illegal gambling businesses fell substantially." *Id.* ¶ 51 (emphasis added).  According to plaintiffs' own unambiguous allegations, their injuries were not proximately caused by the alleged racketeering enterprise, but by the failure of that enterprise "as a result" of an alleged government crackdown.

Where, as here, the alleged injury results from the interruption of the RICO scheme, not from the scheme itself, the Second Circuit has consistently held that there is no RICO causation. *American Express*, 39 F.3d at 400 (plaintiff shareholders' allegations that company's value declined because executives engaged in illegal activity in order to discredit a competitor held too remote because "any losses to American Express were caused only because the scheme itself was exposed and thus failed"); *Abrahams v. Young & Rubicam, Inc.*, 79 F.3d 234, 239 (2d Cir. 1996) (affirming dismissal of RICO claim where "Abrahams was injured, as were the shareholders in *American Express*, by the fallout from the scheme's exposure"); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) (the "injury to Hecht from customers' deciding to cancel subscriptions or to withdraw business *upon discovering the frauds* was not reasonably foreseeable as a natural consequence of the RICO violations") (emphasis added); *Ritchie Capital Mgmt., L.L.C. v. Coventry First, L.L.C.*, No. 07-CV-3494 (DLC), 2008 WL 542596 at *6 (S.D.N.Y. Feb. 29, 2008) (dismissing RICO claims where plaintiffs' injuries resulted from an

Attorney General's investigation becoming public); *In re Crazy Eddie Sec. Litig.*, 714 F. Supp.

1285, 1291 (E.D.N.Y. 1989) (finding no proximate causation under RICO where "[t]he

subsequent crash in the price of Crazy Eddie securities and decline in the company's

creditworthiness resulted from public revelation of the individual defendants' frauds").  Under

this well-established precedent and the allegations of the complaint, plaintiffs lack standing to

bring claims under RICO, either directly or derivatively.

The policy basis of the doctrine of RICO causation supports this outcome.  RICO's

requirement of proximate causation, like the general doctrine of proximate cause, is founded in

social policy concerns, including the difficulty of assessing and apportioning damages, exposure

to multiple claims for the same conduct, and deterrence of undesirable conduct.  *Anza*, 547 U.S.

at 458; *Holmes*, 503 U.S. at 269.  In *Anza*, the Supreme Court found the RICO claims defective

because the alleged injury was too indirect.  The Court observed that, with respect to the RICO

"by reason of" causation element,

> [o]ne motivating principle is the difficulty that can arise when a
> court attempts to ascertain the damages caused by some remote
> action.  *See id.* at 269, 112 S. Ct. 1311 ("[T]he less direct an injury
> is, the more difficult it becomes to ascertain the amount of a
> plaintiff's damages attributable to the violation, as distinct from
> other, independent, factors").  The instant case is illustrative.  The
> injury Ideal alleges is its own loss of sales resulting from
> National's decreased prices for cash-paying customers.  National,
> however, could have lowered its prices for any number of reasons
> unconnected to the asserted pattern of fraud.

547 U.S. at 458 (citing *Holmes*).

Here, plaintiffs allege their injury is the decreased value of their portfolio in the Funds

due to the government "crackdown."  Compl. ¶ 51.  This injury is so indirect it could be

measured, if at all, only after exhaustive (and likely fruitless) consideration of the myriad other

competing and offsetting effects of the type considered by the Supreme Court in *Anza* and

*Holmes.*  How large (or miniscule) were the Funds' investments in the unnamed gambling

business as a percentage of their overall investments?  Absent the Funds' purchase of shares in

those businesses, what other (and more or less profitable or unprofitable) investments would the

Funds have made over the years since the subject purchases were made, and with what frequency

and to what effect would those investments have been changed over time?  How, if at all, could

the answers to those questions and many others possibly be determined with certainty?  These

are exactly the type of "what if" questions that are meant to be foreclosed by RICO's

requirement of "by reason of" causation.

In sum, plaintiffs lack standing under the RICO proximate cause analysis because their

alleged injuries were not directly caused by the alleged RICO violation.

### B.     Plaintiffs' Allegations Also Establish That They Were Not Targets or Victims of the Alleged RICO Violations

Plaintiffs also cannot establish proximate cause because they were not the targets or

victims of the alleged RICO violation.  Section 1955 was part of an Act intended to ameliorate

the pernicious influence of organized crime in the United States, which was exercised, among

other ways, through crimes including drug trafficking, theft and fencing of stolen property, loan

sharking and gambling.  *See* Pub. L. No. 91-452, 84 Stat. 922, 922 (1970) (Statement of Findings

and Purpose).  The victims of violations of Section 1955 are those who bet and lose in illegal

gambling operations, or are victimized by the crimes associated with illegal gambling.  Those

who operate, control, direct, or own illegal gambling operations (including, arguably, those who

may benefit from such activity, such as mutual fund shareholders) are expected *beneficiaries*, not

victims of the alleged predicate acts.  *See*, *e.g.*, *American Express*, 39 F.3d at 400 n.3 (purpose of

American Express's allegedly illegal acts was to advance its competitive interests, and

shareholders could not, therefore, allege RICO injury).

10

The Supreme Court's recent decision in *Anza v. Ideal Steel* is controlling here.  *See Anza*, 547 U.S. at 461.  In *Anza*, the plaintiff (Ideal Steel), which sold steel mill products, alleged that it was injured because the defendant (plaintiff's principal competitor) did not charge New York sales tax on cash sales, hid this by submission of fraudulent tax filings with the State of New York, and used the savings to reduce its prices, thereby gaining customers and sales that would otherwise have gone to the plaintiff.  *Id.* at 454-55.  The district court granted the defendant's motion to dismiss because the fraudulent submissions had been made to the State of New York, not the plaintiffs.  *Id.* at 455.  The Second Circuit reversed, finding the plaintiffs had sufficiently alleged proximate RICO causation.  *Id.*  In turn, the Supreme Court reversed, holding that the "direct victim of this conduct was the State of New York, not Ideal.  It was the State that was being defrauded and the State that lost tax revenue as a result." *Id.* at 458.

In applying the RICO proximate cause analysis, the Second Circuit also has "repeatedly emphasized that the reasonably foreseeable victims of a RICO violation are the targets, competitors and intended victims of the racketeering enterprise." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 124 (2d Cir. 2003).  For example, in *American Express*, the Second Circuit held that shareholders of a company were not foreseeable victims of alleged racketeering activity aimed at defaming the company's competitor.  39 F.3d at 400 ("[T]he shareholders of American Express were certainly not the intended targets of the RICO violations.  Quite the contrary, the RICO violations were intended to benefit American Express by injuring one of its competitors.").  Similarly in *Sperber v. Boesky*, 849 F.2d 60, 64-65 (2d Cir. 1988), the court held that a class of investors were not foreseeable victims of alleged racketeering activity consisting of insider trading and other illegality not aimed at them.

11

As in *Anza, Lerner*, *American Express*, and *Sperber*, plaintiffs in this case are not foreseeable victims of the alleged racketeering activity. Here, the alleged racketeering activity is the investment in "illegal gambling businesses." Surely, the targets of an illegal gambling business are gamblers — people who place bets and lose money through an illegal operation. According to the logic of the complaint, plaintiffs were *beneficiaries* of the alleged racketeering activity because their shares in the Funds would increase in value if the gambling businesses were successful. Plaintiffs, by their own logic, were therefore *not* foreseeable *victims* of the alleged racketeering activity and cannot establish proximate cause sufficient to support a RICO claim.

Again, the policy considerations behind the RICO proximate cause requirement support this outcome. These concerns are directly implicated where, as here, the RICO claims derive from injury to a company from the interruption of alleged illegal activity *not* directed at the plaintiffs. For example, in *Anza*, the Supreme Court noted that "[t]he requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *Id.* at 460. Here, victims of the alleged predicate act – those injured by illegal gambling – can pursue redress for any harm directly. Assuming, without conceding, that investing in publicly traded European companies creates the kind of injury that Section 1955 was intended to prevent (the growth of organized crime in America), extending RICO standing to mutual fund shareholders such as plaintiffs would actually fail to compensate the class of victims that the law was intended to protect and would expose the defendants to the unjust possibility of duplicative liability.

Plaintiffs cannot establish proximate cause under RICO because (1) their injuries did not directly result from the alleged racketeering activity, and (2) they were not the targets of that

activity.  As such, plaintiffs lack standing to bring both direct and derivative claims under RICO,
and plaintiffs' first through fourth claims and seventh through tenth claims should be dismissed
with prejudice.[5]

## II.        PLAINTIFFS FAIL TO PLEAD ANY RICO PREDICATE ACTS

Even if plaintiffs had standing to bring RICO claims, plaintiffs fail to allege adequately
that the Funds' purchase of shares in any company constitutes a RICO predicate act.  The sole
predicate act alleged is 18 U.S.C. § 1955, which imposes criminal liability on anyone who
"conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling
business."  Plaintiffs' allegations, however, do not meet the pleading standards under Fed. R.
Civ. P. 8 because they fail to provide any grounds for believing that companies in which the
Funds invested were "illegal gambling businesses," and, even if they did, there is no authority for
their claim that the mere purchase of publicly traded stock can be a violation of Section 1955.

Section 1955 defines an illegal gambling business as one that "is a violation of the law of
a State or political subdivision in which it is conducted."  18 U.S.C. § 1955(b)(1)(i); *see also*
*United States v. Bala*, 489 F.3d 334, 340 (8th Cir. 2007) ("[T]he government must prove more
than a violation of some state law by a gambling business.  *The gambling business itself* must be
illegal . . . we must identify those criminal violations of state law that turn a legal gambling
business into an 'illegal gambling business' that is itself a violation of state law.") (emphasis in
original); *In re Mastercard Int'l, Inc. Internet Gambling Litig.*, 132 F. Supp. 2d 468, 483 (E.D.

---

[5]   Plaintiffs' state law claims should also be dismissed for lack of proximate cause, as they
depend on the same broken chain of causation.  Compl. ¶¶ 59-64; *Duphily v. Delaware Elec. Co-
op., Inc.*, 662 A.2d 821, 829 (Del. 1995) ("[A] proximate cause is one which in natural and
continuous sequence, *unbroken by any efficient intervening cause,* produces the injury and
without which the result would not have occurred.") (quotation omitted).  The government's
alleged "crackdown" is an intervening cause affecting all claims, supporting dismissal.

La. 2001) ("Plaintiffs' allegations with respect to . . . 18 U.S.C. § 1955 are quite ephemeral, there simply is no cause of action for those crimes unless the defendants committed an unlawful activity in violation of some other state or federal law.  As plaintiffs have failed to allege that defendants' activities are illegal, this case presents no other cause of action under Title 18 that can be a predicate act under RICO.").

In the complaint, plaintiffs merely recite the definition of an "illegal gambling business" without making any factual allegations to support their conclusions.  Compl. ¶ 48.  The complaint does not identify the companies alleged to be "illegal gambling businesses" or the state or local laws those companies allegedly violated.  Such bare bones allegations fall well below Rule 8's pleading standard.  *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (complaint must "provide the ground upon which its claim rests through factual allegations sufficient to raise a right to relief above the speculative level").

Further, even if the businesses and alleged illegalities were properly identified, research has revealed no case holding that a mere purchase of publicly traded shares can equate to criminal liability under Section 1955 — stated more precisely, there appears to be no authority to support plaintiffs' assertion that a mere purchase of publicly traded shares constitutes conducting, financing, managing, supervising, directing or owning a gambling enterprise.

Plaintiffs' theory in this case not only lacks support in the case law, but it also flies in the face of common sense.  Obviously, the first five activities prohibited under Section 1955 (from conducting to directing) require *active involvement*, which is not even suggested here.  Nor is the

sixth prohibited activity of "ownership" supported by the pleadings.  To bring plaintiffs' allegations within the scope of Section 1955, the Court would have to read the operative language of the statute expansively and past the point of coherence — the Court would have to find that anyone who purchases even one share of a publicly traded gaming company is criminally responsible for "owning" an illegal gambling business.  The spirit of the case law and legislative history are all the other way.

Congress intended that Section 1955 reach "only those persons who prey systematically upon our citizens and whose syndicated operations are so continuous and so substantial as to be of national concern" and are "of considerably greater magnitude than simply meet[ing] the minimum definitions."  H.R. Rep. 91-1549, 91st Cong. 2d Sess., 2 U.S. Code Cong. & Admin. News (1970) at 4029.  Courts have consistently found that Section 1955 should be read narrowly.  *See*, *e.g.*, *United States v. Bridges*, 493 F.2d 918, 922 (9th Cir. 1974) ("To construe these provisions as urged by the government would not further the congressional purpose, for such a broad construction could subject almost any small gambling operation to federal regulation.  This is clearly not the function of § 1955.").  The absurdity of plaintiffs' theory is highlighted by the fact that the government does not even subscribe to it.  The complaint alleges that there was a government crackdown — but that it was directed at the alleged gambling businesses and their officers, not at anyone who merely held shares in those companies.  Plaintiffs can make no allegation that any of the defendants in this case have been threatened with criminal prosecution or have even been investigated by any governmental entity in connection with alleged purchases of shares in the supposed gambling companies.

No court has read Section 1955 to impose liability on a public shareholder with no other involvement in the company.  This Court should not be the first to make such law.  To do so

would impose criminal liability on any investor who purchases even one share in a company that has any involvement with on-line gambling.  Plaintiffs therefore cannot allege a predicate act, and their RICO claims should be dismissed.[6]

### III.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS' CLAIMS ARE DERIVATIVE, AND PLAINTIFFS HAVE FAILED TO PLEAD DEMAND FUTILITY AND CONTEMPORANEOUS OWNERSHIP

As a further basis for dismissal, plaintiffs lack standing to bring any claims individually or as class representatives because they allege harm only to the Funds themselves and the entirety of the Funds' investors.  Such claims can be maintained only as derivative claims.  The law is well established that shareholders' RICO claims based on allegations that predicate acts injured the corporation are derivative in nature and should be dismissed.  *See Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993); *American Express*, 39 F.3d at 401.  In addition, plaintiffs' derivative claims fail because plaintiffs made no demand to the Funds' Boards of Trustees and because insufficient facts are alleged to suggest such a demand would be futile. Plaintiffs' derivative claims also fail because plaintiffs have failed to allege facts satisfying the "contemporaneous ownership" rule.  *In re Bank of New York Derivative Litig.*, 320 F.3d 291, 297-98 (2d Cir. 2003); Compl. ¶¶ 1,13, 37-39, 46-48, 51.

The Trustees make these arguments in greater detail in their motion to dismiss, filed October 27, 2008, which the Vanguard Defendants hereby join in all respects and incorporate fully by reference herein.  *See* Memorandum of Points and Authorities in Support of the Trustee and

---

[6]  The proximate cause and predicate act requirements apply equally to claims under both Section 1962(c) and 1962(d), so all the RICO claims should be dismissed.  *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996)("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations."), *vacated on other grounds*, 525 U.S. 128 (1998).

Fund Defendants' Motion to Dismiss, filed Oct. 27, 2008, and Declaration of Penny Shane, filed Oct. 27, 2008.

## IV.   THE COURT SHOULD NOT GRANT PLAINTIFFS LEAVE TO AMEND THE COMPLAINT BECAUSE AMENDMENT WOULD BE FUTILE

The premise of plaintiffs' complaint is so fundamentally unsound that the Court should not grant leave to amend.  Any amendment would be futile – plaintiffs cannot plead facts that would be consistent with their existing allegations and yet survive dismissal.  *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (affirming dismissal without leave to amend of class action by mutual fund shareholders against trustees and investment advisors); *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (affirming dismissal without leave to amend, finding that "where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied"); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 76 (2d Cir. 1998) (affirming dismissal without leave to amend where plaintiff had "made no showing that he would be able to amend his complaint in a manner that would survive dismissal").

Leave to amend is unnecessary where plaintiffs' claims have been adequately stated. Such is the case here.  Even if the omissions as to the names of the alleged gambling companies and the laws they allegedly violated were provided, plaintiffs' claims would still fail, because they would have to contradict their current allegations to establish both proximate cause and predicate acts under RICO.  Plaintiffs' own allegations establish that it was a government "crackdown," not the alleged RICO violation, that caused their alleged injuries.  *See supra* Section I.  Similarly, plaintiffs' own Complaint and stipulation dismissing AllianceBernstein establish that the alleged predicate acts consist merely of the purchase of publicly traded shares in lawful European companies, which cannot sensibly be viewed as a violation of Section 1955.

*See supra* Section II.  To amend their complaint to state a RICO claim, plaintiffs would have to contradict their current allegations, which is not permissible.  *See Twombly*, 127 S. Ct. at 1969 (2007) ("[O]nce a claim has been stated adequately, it may be supported by showing any set of facts *consistent with* the allegations in the complaint.") (emphasis added) (citations omitted); *Walzer v. UAL Corp*, No. 05-CV-0581, 2008 WL 87944 at *3 (S.D.N.Y. Jan. 2, 2008) (denying leave to replead where it would be futile because "certain statements in the pleading as filed are completely inconsistent with any allegation that the plaintiff relied on any purported misrepresentations to his detriment-which is necessary to support a securities fraud claim" and noting that plaintiffs' admissions in the complaint that are fatal to his claims cannot be retracted through amendment).

The Second Circuit has frequently upheld dismissals of RICO claims without leave to amend where the plaintiff lacked standing because her alleged injuries were not proximately caused by the alleged RICO violation.  *See Baron v. Complete Management, Inc*., 260 Fed. Appx. 399, 401 (2d Cir. 2008) (affirming dismissal without leave to amend because, among other things, plaintiff had not (and could not have) satisfied "RICO's pleading requirements with respect to standing"); *Hollander v. Flash Dancers Topless Club*, 173 Fed. Appx. 15, 19 (2d Cir. 2006) (affirming dismissal of RICO claims without leave to amend where plaintiff "failed to allege any injury to his business or property proximately caused in 2000, in 2002, or at any other time"); *American Express*, 39 F.3d at 402 (affirming dismissal without leave to amend where "[a]ppellants have not indicated how they could satisfy RICO's proximate cause requirement, and it is hardly self-evident that they could transform the facts pleaded into a sufficient allegation of proximate injury to American Express")  The Court should deny leave to amend here because,

18

as in *Baron*, *Hollander*, and *American Express*, there is no way for plaintiffs to plead facts consistent with their current allegations that would establish standing under RICO.

As the defects in plaintiffs' RICO claims are incurable, the Court should also decline to exercise supplemental jurisdiction over any remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3) (authorizing the dismissal of state law claims over which a district court could otherwise assert supplemental jurisdiction, when the court "has dismissed all claims over which it has original jurisdiction"); *see Kolari v. New York-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006) ("'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988)).

/

/

/

/

/

/

/

/

/

/

/

/

/

**Conclusion**

For the reasons stated above, plaintiffs have failed to state a claim, and the Vanguard

Defendants respectfully submit that the complaint should therefore be dismissed with prejudice

and without leave to amend.

DATED:    Los Angeles, California
          October 27, 2008

QUINN EMANUEL URQUHART OLIVER &
    HEDGES, LLP


By: s/ Harry A. Olivar, Jr.
    Harry A. Olivar, Jr.
    harryolivar@quinnemanuel.com

865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Sascha N. Rand
sascharand@quinnemanuel.com
Quinn Emanuel Urquhart Oliver & Hedges, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

*Attorneys for Defendants The Vanguard Group,*
*Inc., George U. Sauter, and Duane F. Kelly*

20