Barry M. Bordetsky (BB4218)
Littman Krooks, LLP
570 Lexington Avenue, 44th Floor
New York, New York 10022
Tel: (212) 688-0008
Fax: (212) 319-7605
barry@bordetskylaw.com

Michael J. Cereseto (XXXXXX, *Admitted Pro Hac Vice*)
L. Richard Walton (XXXXXX, *Admitted Pro Hac Vice*)
BuchalterNemer, A.P.C.
1000 Wilshire Blvd, Suite 1500
Los Angeles, California 90017
(213) 891-0700
(213) 630-5774
mcereseto@buchalter.com
rwalton@buchalter.com

Attorneys for Defendants
Marathon Asset Management, LLP;
William J. Arah;
Jeremy J. Hosking; and
Neil M. Ostrer

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Deanna McBrearty and Marylynn Hartsel, individually, derivatively and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>   -against-<br><br>The Vanguard Group, Inc., George U. Sauter, Duane F. Kelly, John J. Brennan, Charles D. Ellis, Rajiv L. Gupta, Amy Gutmann, JoAnn Heffernan Heisen, Andre F. Perold, Alfred M. Rankin, Jr., J. Lawrence Wilson, Acadian Asset Management, LLC, Ronald D. Frashure, John R. Chisholm, Brian K. Wolahan, AllianceBernstein LP, Henry S. D'Auria, Sharon E. Fay, Kevin F. Simms, Marathon Asset Management, LLP, William J. Arah, Jeremy H. Hosking, and Neil M. Ostrer,<br><br>     Defendants,<br><br>   -and-<br><br>Vanguard International Equity Index Funds, d/b/a Vanguard European Stock Index Fund, and Vanguard Horizon Funds, d/b/a Vanguard Global Equity Fund,<br><br>     Nominal Defendants. | 08 CV 7650 (DLC) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MARATHON DEFENDANTS' MOTION UNDER RULE 12(b)(2)**

## TABLE OF CONTENTS

                                                **Page**

I. INTRODUCTION AND ISSUE PRESENTED ................................................... 2

II. FACTUAL BACKGROUND ............................................................................... 3

III. LEGAL ARGUMENT .......................................................................................... 6

    A. Fundamentals of Jurisdiction ................................................................... 6

    B. Burden of Proof ........................................................................................ 8

    C. Jurisdiction Must Exist for Each Defendant ............................................ 8

    D. Due Process Requirements Are Not Met in This Case ............................ 8

        1. Minimum Contacts: There is No Factual Basis for General Jurisdiction ................................................................................... 9

        2. Minimum Contacts: There is no Factual Basis for Specific Jurisdiction ................................................................................. 11

        3. Exercise of Personal Jurisdiction is Not Reasonable in this Case ............................................................................................ 12

IV. CONCLUSION ................................................................................................... 13

## TABLE OF AUTHORITIES

Page

**Cases**

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ................................................................................................................ 12

*Calder v. Jones*,
   465 U.S. 783, 790 (1984) ................................................................................................ 5, 6, 11

*Consolidated Devel. Corp. v. Sherritt, Inc.*,
   216 F.3d 1286 (11th Cir. 2000) ..................................................................................... 9, 10, 13

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ............................................................................................................ 9, 10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ............................................................................................................ 9, 10

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ................................................................................................................ 12

*Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd.*,
   298 F.3d 1 (1st Cir. 2002) ..................................................................................................... 9-10

*Kernan v. Kurz-Hastings, Inc.*,
   175 F.3d 236 (2d Cir. 1999) ............................................................................................... 5, 10

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 600-601
   (S.D.N.Y. 1998) ......................................................................................................................... 6

*Mende v. Milestone Tech., Inc.*,
   269 F.Supp. 2d 246 (S.D.N.Y. 2003) ........................................................................................ 5

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996) .................................................................................................... 8, 9

*Nat'l Asbestos Workers Medical Fund v. Philip Morris, Inc. et al*,
   86 F. Supp. 2d 137 (E.D.N.Y. 2000) ..................................................................................... 6, 7

# TABLE OF AUTHORITIES
## (continued)

**Statutes**                                       **Page**

18 U.S.C. § 1955(b) ...................................................................................................................4
18 U.S.C. § 1965(a) ................................................................................................................6, 7
CPLR § 302(a)(3)(i) ....................................................................................................................7
CPLR § 302(a)(3)(ii) ...................................................................................................................7
FRCP 12(b)(2) .............................................................................................................................5
FRCP 4(k)(2) .........................................................................................................................6, 12

**Other Authorities**

Moore's Federal Practice § 108.41[3].........................................................................................9

BN 2370898v1

# I.
# INTRODUCTION AND ISSUE PRESENTED

Plaintiffs' Complaint asks this Court to exercise jurisdiction over two UK citizens who do not regularly visit this District, and who did not participate in the stock trades at issue. In fact, Plaintiffs would have this Court apply RICO's civil provisions to a grand total of seven stock trades in a European company with no physical US presence, made over an eight month period on the London Stock Exchange by Defendant Ostrer, a UK resident whose only relation to Defendants Arah and Hosking is that all three act as portfolio managers for Marathon Asset Management, LLP, an investment advisory firm in London.

Arah and Hosking are also both UK residents, who infrequently visit this District (or the United States), who did not participate in or oversee the trades in the subject stock, and who were not even aware the trades were being made. Before reaching the questionable merits of the underlying case, Defendants Arah and Hosking respectfully request that this Court determine that they lack sufficient general or specific contacts with this District or this action to be subject to personal jurisdiction.

# II.
# FACTUAL BACKGROUND

Defendants William J. Arah ("Arah"), Jeremy J. Hosking ("Hosking") and Neil M. Ostrer ("Ostrer") act as portfolio managers for Defendant Marathon Asset Management, LLP ("Marathon") (collectively, "the Marathon Defendants"). (Arah Affidavit ¶ 3; Hosking Affidavit ¶ 3; Ostrer Affidavit ¶ 3). Marathon is a Limited Liability Partnership formed and operated under the laws of the United Kingdom; its principal place of business is in London, England. (Arah Affidavit ¶ 3; Hosking Affidavit ¶ 3; Ostrer Affidavit ¶ 3). Each of the Marathon Defendants is a resident of the

United Kingdom.  (Arah Affidavit ¶ 1; Hosking Affidavit ¶ 1; Ostrer Affidavit ¶ 1).  Arah specializes in Japanese equities; Hosking in Southeast Asia, South African, and North American equities; and Ostrer in European equities.  (Arah Affidavit ¶ 4; Hosking Affidavit ¶ 4; Ostrer Affidavit ¶ 4).  They have limited knowledge of each other's trading activities, and do not review or have knowledge of specific trades other than their own.  (Arah Affidavit ¶ 4; Hosking Affidavit ¶ 4; Ostrer Affidavit ¶ 4).  Arah, Hosking, and Ostrer each have separate and independent investment teams within their areas of expertise and each exercises investment discretion autonomously over a different part of the portfolio of assets of the Vanguard Global Equity Fund ("the Fund") (Arah Affidavit ¶ 4; Hosking Affidavit ¶ 4; Ostrer Affidavit ¶ 4).

Marathon acts only as an investment advisor for the Fund; none of the Marathon Defendants markets to or solicits business from, individual US Investors in the Fund.  (Arah Affidavit ¶ 5; Hosking Affidavit ¶ 5; Ostrer Affidavit ¶ 5).

The Complaint targets a total of seven trades made over the course of eight months by Mr. Ostrer in one European security, PartyGaming.  (Ostrer Affidavit ¶ 7).  PartyGaming is headquartered in Gibraltar and is traded on the London Stock Exchange.  (Ostrer Affidavit ¶ 6).  It derives most of its revenues from online "real money" poker games, in which US consumers participated prior to the enactment, in October of 2006, of the Unlawful Internet Gambling Enforcement Act of 2006 ("the Act").  (Ostrer Affidavit ¶ 7 & 9).  The Act limited the ability of banks and gambling websites to transfer funds for "real money" online gambling.  (Ostrer Affidavit ¶ 9).

Ostrer, the European equity expert at Marathon, began researching possible investments in online gambling businesses in June of 2005.  (Ostrer Affidavit ¶ 6).  At

that time, online gambling businesses were generating high levels of cash flow and were growing rapidly. (Ostrer Affidavit ¶ 6 & 7). Ostrer conducted this research independent of Arah and Hosking, and they were unaware he had decided to purchase the stock at issue in this Complaint. (Arah Affidavit ¶ 6; Hosking Affidavit ¶ 6; Ostrer Affidavit ¶ 8). Having performed his due diligence, Ostrer decided, in April 2006, to invest in PartyGaming, one of the leading online gaming stocks at that time. (Ostrer Affidavit ¶ 6). Neither Arah nor Hosking were told of this decision, and neither were aware that Ostrer purchased and sold shares of PartyGaming for the Fund (Arah Affidavit ¶ 6; Hosking Affidavit ¶ 6; Ostrer Affidavit ¶ 8) in a total of five buy and two sell transactions between April and December of 2006. (Ostrer Affidavit ¶ 7).

These transactions, spanning only eight months, fell victim to an unexpected development in the US: online gambling—which had arguably *not* been a Federal crime for non-US companies prior to the enactment of the Act in October 2006 (a fact the Act did nothing to change, since Federal law defers to the states on this issue, *see* 18 U.S.C. § 1955(b))—could no longer receive funds from US consumers. (Ostrer Affidavit ¶ 9). After waiting to see whether PartyGaming's share prices would recover after this unexpected development, Ostrer elected to sell all of the PartyGaming shares in December of 2006. (Ostrer Affidavit ¶ 9). Neither Arah nor Hosking was aware of this decision to sell the PartyGaming shares. (Arah Affidavit ¶ 6; Hosking Affidavit ¶ 6; Ostrer Affidavit ¶ 7).

Arah and Hosking do not frequently travel to the US. In 2006, Arah made only one trip to New York, and only two trips to the US in 2005. (Arah Affidavit ¶ 7). In 2006, Hosking made six trips to the US and Canada (North American equities being one

of his areas of responsibility) and only three trips in 2005. (Hosking Affidavit ¶ 7). None of these trips related to the PartyGaming trades at issue in this case, and none were made to solicit any of the investors in the Fund. (Arah Affidavit ¶ 7; Hosking Affidavit ¶ 7).

Neither Arah nor Hosking operate any business organized in the United States. (Arah Affidavit ¶ 8; Hosking Affidavit ¶ 8). Neither Arah nor Hosking owns any real or personal property here. (Arah Affidavit ¶ 8; Hosking Affidavit ¶ 8). Neither Arah nor Hosking has any close family here. (Arah Affidavit ¶ 8; Hosking Affidavit ¶ 8). The only reason either comes to the US is for vacation or when necessary to conduct business. (Arah Affidavit ¶ 8; Hosking Affidavit ¶ 8). None of their trips in 2005 or 2006 had any relation to the stock trades at issue in this case. (Arah Affidavit ¶ 8; Hosking Affidavit ¶ 8).

### III.
### LEGAL ARGUMENT

A.   Burden of Proof

When any defendant moves for dismissal under Rule 12(b)(2), it is the plaintiff's burden of proof to establish that the Court has jurisdiction. *Kernan v. Kurz-Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir. 1999). Conclusory allegations by the plaintiff "are not enough to establish personal jurisdiction." *Mende v. Milestone Tech., Inc.,* 269 F.Supp. 2d 246, 251 (S.D.N.Y. 2003).

B.   Jurisdiction Must Exist for Each Defendant

Each defendant's actions must be assessed separately to determine whether jurisdiction over that party is proper. *Calder v. Jones*, 465 U.S. 783, 790 (1984). A corporation's contacts are made through its agents and employees. *See Jet Wine &*

*Spirits, Inc. v. Bacardi & Co., Ltd.*, 298 F.3d 1, 7-8 (1st Cir. 2002) (contacts of corporation are those imputed to it through its agents). However, proof that sufficient contacts support the exercise of personal jurisdiction over a corporation does *not* automatically establish that sufficient contacts exist to justify the exercise of jurisdiction over individual officers or employees. *Calder*, 465 U.S. at 790 ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there."). The specific contacts of each individual must be assessed.

C.   Fundamentals of Jurisdiction

Rule 4(k) of the Federal Rules of Civil Procedure provides that service of summons, or filing a waiver of service, confers personal jurisdiction over foreign defendants only in the following three instances: (1) under circumstances permitted by New York's so-called "long-arm statute"; (2) under circumstances permitted by any specialized federal long-arm statute; or (3) in federal question cases, subject to the limits of the U.S. Constitution, provided that the defendant is not subject to jurisdiction in any other state. Fed. R. Civ. P. 4(k)(2).

The "broad venue and nationwide service provisions" of RICO, 18 U.S.C. § 1965(a), allowing service on parties "residing in any other district" are inapplicable here because both Defendants reside in England and thus cannot be subject to the long-arm provisions of section 1965(a). *See, e.g., Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 600-601 (S.D.N.Y. 1998); *Nat'l Asbestos Workers Medical Fund v. Philip Morris, Inc. et al*, 86 F. Supp. 2d 137, 140 (E.D.N.Y. 2000). "Because effective service is a prerequisite to the exercise of personal jurisdiction, a foreign party against whom a RICO claim is asserted must be served with process in this country." *Laborers Local 17*, 26 F.Supp. 2d at 601. Neither Defendant

Arah nor Defendant Hosking were personally served with process here in the United States and section 1965(a) has therefore not been satisfied. (See *Summons and Affidavit of Service* on file with the Court for Mr. Hosking and Mr. Arah).

We next look to whether New York's long arm statute or general Federal jurisdiction is applicable. Here, Plaintiffs' only possible argument for jurisdiction under New York's long-arm statute would be that a tortious act was committed outside the state that caused harm within New York, but only if Defendant:

1.  Regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state (CPLR § 302(a)(3)(i)); *or*

2.  Expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce (CPLR § 302(a)(3)(ii).

As to the first basis for jurisdiction, Defendants do not do business here, nor do they solicit investors such as Plaintiffs. They rarely travel here, and the trades at issue (of which they were unaware) occurred on the London Stock Exchange. Unlike *National Asbestos*, no conspiracy existed to mislead the public, block research, or hide incriminating evidence. All trades at issue are a matter of public record.

The second basis for jurisdiction under CPLR § 302 is inapplicable on these facts: the Court has before it two residents of England, with no connection to the subject trades other than the fact that they were colleagues of Ostrer. Since neither had any involvement in—or knowledge of—the trades at issue in the Complaint, it is impossible to conclude they could have reasonably expected these trades to have consequences in

New York. That leaves Plaintiffs with one thread upon which to attempt to hang *in personam* jurisdiction: the Federal long arm test under FRCP 4(k)(2) and the general requirements of Due Process. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

D.   Due Process Requirements Are Not Met in This Case

Due process is a fundamental restriction on a court's ability to exercise personal jurisdiction over non-resident defendants who do not regularly conduct business in the forum where the court resides; it permits a court to exercise personal jurisdiction over a non-resident defendant where maintenance of the suit does not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A two-part inquiry determines whether these notions are offended.

The first question is whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996). If this question is answered in the affirmative, the second question is whether the assertion of personal jurisdiction "is reasonable under the circumstances of the particular case." *Id*. at 568. The significance of a party's contacts with the forum may be a factor in determining reasonableness. *Id.*

The minimum contacts test can only be met with a factual showing sufficient to support either of two forms of jurisdiction: general or specific.

1.   Minimum Contacts: There is No Factual Basis for General Jurisdiction

General jurisdiction permits the forum court to exercise jurisdiction over the defendant in a case involving any claims, regardless of whether the claim relates to the

defendant's activities in the forum. General jurisdiction may be had in cases in which an individual resides in the forum, or has contacts with the state that are "continuous and systematic," such that the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-416 and n. 10 (1984).

"Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'" *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Limited activities, such as holding meetings in the forum state, negotiating a contract, purchasing materials (even if done regularly), and even offering stock for sale in the United States are insufficient. *See, e.g., Consolidated Devel. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292-93 (11th Cir. 2000). In sum, courts hesitate to find general jurisdiction. *See generally*, Moore's Federal Practice § 108.41[3].

In *Sherritt,* a plethora of Canadian and Bahamas-based entities were sued by a US Company, alleging that the offshore entities had profited from oil drilling concessions that had been misappropriated by Cuba in 1959 and later sold to the offshore defendants. Despite the fact that the one of the defendants had offered debentures for sale in the state several years prior to the suit, the Court held that general jurisdiction was not established. 216 F.3d at 1292.

Here, Arah and Hosking have even less contacts. They are not residents of the United States; they reside in the United Kingdom. Arah traveled to the United States

only three times in 2005 and 2006; only one of those trips was to the Southern District of New York.  Hosking traveled here only nine times in 2005 and 2006, and his trips related to research for the purchase and sale of securities unrelated to this lawsuit.  Neither Arah nor Hosking operates a business organized in the US.  Neither owns any US real estate or personal property, has close family here, or comes here regularly for business.  As in *Hanson* and *Sherritt,* they have not "purposely avail[ed]" themselves of the privilege of regularly conducting business within the forum.

      2.    <u>Minimum Contacts: There is no Factual Basis for Specific Jurisdiction</u>

Specific jurisdiction, on the other hand, exists where a forum exercises personal jurisdiction over a defendant "in a suit arising out of or related to the defendant's contacts with the forum."  *Helicopteros*, 466 U.S. at 414 n.8.  Specific jurisdiction generally has three requirements:

(1)    the defendant performed an act within the forum or directed its activities toward the forum such that it purposefully availed itself of the privileges of the forum;

(2)    the claim arises out of or relates to the defendant's forum-based activity; and

(3)    the exercise of jurisdiction is reasonable.

*See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 246 (2d Cir. 1999).

Here, Plaintiffs alleged in their Complaint, as a basis for the exercise of personal jurisdiction against Defendants Arah and Hosking, that each "were responsible for implementing the investment strategy complained of", and that each "exercised operational or managerial oversight over the portfolio holdings of Vanguard Global."

Similar to the AllianceBernstein defendants, the Plaintiffs were misinformed. Defendants Arah and Hosking had nothing whatsoever to do with the trades at issue, and in fact were unaware of the trades in PartyGaming stocks until after they had been carried out by Ostrer.  Arah and Hosking therefore did nothing which has led in any way to Plaintiffs' alleged harm, and should not now be asked to travel to this Court from England to answer for acts of which they were unaware.  Alternatively, the Plaintiffs could argue that Arah and Hosking purposely availed themselves of the privileges of doing business in the Southern District, such that it is fair to haul them into court here.  Again, the facts do not support this theory.  Arah and Hosking traveled infrequently to the United States, own no real or personal property here, do not have close family here, and do not operate a business organized in the US.

Finally, in lieu of establishing "purposeful availment," a plaintiff can establish "purposeful direction" as set forth in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).  The "*Calder* effects test" requires that the extraterritorial defendant:

(1) commit an intentional act,

(2) expressly directed at the forum,

(3) that caused harm in the forum.

Here, neither Hosking nor Arah intentionally directed any acts at the forum that caused the Plaintiffs the harm they claim to have suffered.  If, indeed, the Court concludes that any harm was caused in the forum, the harm could not have been intended by either Hosking or Arah, as neither was even aware that the subject trades had been made.

3.  Exercise of Personal Jurisdiction is Not Reasonable in this Case

Even assuming *arguendo* that Plaintiffs can make a factual showing beyond "conclusory allegations" to establish sufficient minimum contacts by Arah and Hosking, they cannot show that it is fair to subject them to being sued in the forum.

In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985), the Supreme Court identified five factors that should be considered in evaluating fairness:

(1) "the burden on the defendant";

(2) "the forum State's interest in adjudicating the dispute";

(3) "the plaintiff's interest in obtaining convenience and effective relief";

(4) "the interstate judicial system's interest in obtaining the most efficient resolution of the controversies"; and

(5) the "shared interest of the several States in furthering fundamental substantive policies." The burden is on the defendant to demonstrate that the exercise of jurisdiction is unfair. *Id*. at 477.

Here, Defendants Arah and Hosking have met that burden. They both reside in England and do business there. Forcing them to defend a lawsuit in this forum, relating to trades of which they were unaware, would place an undue burden upon them. Secondly, while the Court may have an interest in adjudicating the dispute, it has little interest in adjudicating a dispute with defendants who were not involved in the transactions at issue, had no knowledge of the trades, and do not reside within the United States. Third, the plaintiffs will be in no way prejudiced by dismissing both defendants, since Marathon and Ostrer remain. Fourth, the interstate judicial system's interest in obtaining the most efficient resolution of the controversy will be eased by limiting the need for extra-territorial discovery of persons with no knowledge relevant to the suit.

Lastly, the shared interests of the states will not be negatively impacted by granting this motion.

## IV.
## CONCLUSION

Defendants Arah and Hosking cannot conclude more eloquently than did the Court of Appeal in *Sherritt:* "limited and sporadic connections with the forum are not the sort of general systematic business contacts required to sustain the assertion of personal jurisdiction."

For all the foregoing reasons, Defendants Arah and Hosking respectfully request that this Court order that they be dismissed from this lawsuit.

DATED: October 27, 2008    BUCHALTER NEMER
　　　　　　　　　　　　　　A Professional Corporation
　　　　　　　　　　　　　　L. RICHARD WALTON


　　　　　　　　　　　　　　By:   /s/  Michael J. Cereseto
　　　　　　　　　　　　　　　　　MICHAEL J. CERESETO
　　　　　　　　　　　　　　　　　Attorneys for Defendants
　　　　　　　　　　　　　　　　　William J. Arah and Jeremy J. Hosking

# CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2008 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following counsels of record:

Kenneth J. Brennan
**SIMMONS, COOPER, LLC.**
707 Berkshire Boulevard
East Alton, IL 62024
Telephone:  (618) 259-2222
Facsimile:  (618) 259-2251
Email:
kbrennan@simmonscooper.com

Thomas I. Sheridan, III
**HANLY CONROY BIERSTEIN SHERIDAN FISHER & HAYES, LLP**
112 Madison Avenue
New York, NY 10016
Telephone:  (212) 784-6400
Facsimile:   (212) 784-6400
Email:  tsheridan@hanlyconroy.com;
abierstein@hanlyconroy.com;
jlucena@hanlyconroy.com

*Attorneys for Plaintiffs DEANNA McBREATY and MARYLYNN HARTSEL*

Kirk G. Hanson
Brandon F. White
**FOLEY HOAG LLP**
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
Telephone:  (617)-832-3036
Facsimile:   (617)-832-7000
Email:  khanson@foleyhoag.com; bfwhite@foleyhoag.com
*Attorneys for Defendants ACADIAN ASSET MANAGEMENT, LLC,
RONALD D. FRASHURE, JOHN R. CHISHOLM AND BRIAN K. WOLAHAN*

Harry A. Olivar, Jr.
**QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP**
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100
Email:  harryolivar@quinnemanuel.com
*Attorneys for Defendants THE VANGUARD GROUP, INC.,
GEORGE U. SAUTER, and DUANE F. KELLY*

///

///

David Braff
Penny Shane
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004-2498
Telephone:  (212) 558-4000
Facsimile:   (212) 558-3588
Email:  braffd@sullcrom.com; shanep@sullcrom.com
*Attorneys for Defendants JOHN J. BRENNAN, CHARLES D. ELLIS, RAJIV L. GUPTA, AMY GUTMANN, JoANN HEFFERNAN HEISEN, ANDRE F. PEROLD,*
*ALFRED M. RANKIN, JR., and J. LAWRENCE WILSON*


          /s/      *Michael J. Cereseto*
MICHAEL J. CERESETO, ESQ.
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017-2457
Telephone:  (213) 891-0700
Facsimile:   (213) 630-5665