UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Deanna McBrearty and Marylynn Hartsel, individually, derivatively and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>    -against-<br><br>The Vanguard Group, Inc., George U. Sauter, Duane F. Kelly, John J. Brennan, Charles D. Ellis, Rajiv L. Gupta, Amy Gutmann, JoAnn Heffernan Heisen, Andre F. Perold, Alfred M. Rankin, Jr., J. Lawrence Wilson, Acadian Asset Management LLC, Ronald D. Frashure, John R. Chisholm, Brian K. Wolahan, AllianceBernstein LP, Henry S. D'Auria, Sharon E. Fay, Kevin F. Simms, Marathon Asset Management, LLP, William J. Arah, Jeremy H. Hosking, and Neil M. Ostrer,<br><br>      Defendants,<br><br>    -and-<br><br>Vanguard International Equity Index Funds, d/b/a Vanguard European Stock Index Fund, and Vanguard Horizon Funds, d/b/a Vanguard Global Equity Fund,<br><br>      Nominal Defendants. | Case No. 08 CV 7650 (DLC)<br><br>ECF Case<br><br>Electronically Filed |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>ACADIAN DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

    Plaintiffs' RICO and other claims must be dismissed. First, through admissions in their Opposition ("Opp."), Plaintiffs confirm that they cannot establish proximate cause under RICO for any of their alleged harm. Rather, Plaintiffs admit that their claimed injuries were caused by a government "crackdown" on internet gambling businesses (as opposed to the purchase of shares in gambling companies). Plaintiffs further concede that they were the intended

beneficiaries of Defendants' actions.  Accordingly, Plaintiffs do not have standing to bring a RICO claim.  Second, the conduct about which Plaintiffs complain -- purchasing shares of a publicly traded company -- is not a criminal violation of 18 U.S.C. § 1955 and therefore cannot constitute a predicate act under RICO.  Third, even if there were a RICO claim, Plaintiffs could only bring the claim derivatively on behalf of the Funds, and not directly.  Plaintiffs, however, have failed to satisfy the requirements for bringing a derivative claim on behalf of the Funds because they have failed to make pre-suit demand or to plead demand futility.  Because Plaintiffs' RICO claim fails as a matter of law, the Court should decline to exercise supplemental jurisdiction of Plaintiffs' state law claims and should dismiss the entire Complaint with prejudice.

**ARGUMENT**

**I.     PLAINTIFFS LACK STANDING BECAUSE THE ALLEGED RICO VIOLATIONS WERE NOT THE PROXIMATE CAUSE OF THEIR INJURIES.**

In order to have standing to pursue a RICO claim, Plaintiffs must be able to demonstrate that the alleged racketeering activity was the proximate cause of the alleged injuries.  See, e.g., Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006); Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268 (1992).  Proximate cause, however, can only be established where "the alleged violation led *directly* to the plaintiff's injuries."  Anza, 547 U.S. at 461.  In their opposition, however, the plaintiffs repeatedly admit that it was the government's intervening actions -- *not* the alleged RICO violation -- that were the direct cause of their injuries.  See, e.g., Opp. at 10-11, 29, 32, 39.

Numerous cases have held that there is no direct injury -- and therefore no proximate cause -- where the alleged injury resulted from the exposure or disruption of the racketeering activity, as opposed to the activity itself.  See, e.g., In re American Express Co. Shareholder

Litig., 39 F.3d 395, 400 (2d Cir. 1994) ("[T]he commission of the RICO violations is not what injured American Express. Rather, it was the exposure of those acts that caused the appellant's harm."); Abrahams v. Young & Rubicam, Inc., 79 F.3d 234, 236, 238-39 (2d Cir. 1996); Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 24 (2d Cir. 1990); Ritchie Capital Management LLC v. Coventry First LLC, 2008 WL 542596, *6 (S.D.N.Y. Feb. 29, 2008). These cases are controlling on the issue of proximate cause.

Plaintiffs try unsuccessfully to distinguish these cases. Opp. at 38-41. They admit, as they must, that the court in each case held that there was no RICO proximate cause when the claimed injuries occurred because of an exposure or disruption of the racketeering. Plaintiffs do not point to a single case finding proximate cause where an intervening government "crackdown" caused the claimed injuries. Plaintiffs' own admissions thus demonstrate that there is no proximate cause here.

Moreover, the Second Circuit has repeatedly explained that standing to bring a RICO claim is limited to "the targets, competitors and intended victims of the racketeering enterprise." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 124 (2d Cir. 2003); see Baisch v. Gallina, 346 F.3d 366, 374 (2d Cir. 2003). Even the cases that Plaintiffs cite include an examination of whether the plaintiffs are victims of the alleged racketeering. See Opp. at 35-37. Plaintiffs, however, cannot demonstrate that they were the targets or intended victims of the alleged racketeering enterprise. Quite the contrary, they admit that they were the *intended beneficiaries*. See Opp. at 3 (conceding that defendants were seeking "bigger returns for investors [i.e., plaintiffs]"); Opp. at 36 ("Defendants' investments in illegal gambling businesses may have been partly intended to benefit Plaintiffs…."). Having admitted they were the intended beneficiaries of the investments,

Plaintiffs cannot allege any facts showing that they were the intended victims of the same investments.

Plaintiffs' criticisms that this argument is based on a rejected "zone of interests" test, Opp. at 37, is a red herring. The Second Circuit has made clear that the "proximate cause" test in Holmes (on which Plaintiffs rely) is just another name for the "zone of interests" test used in the Second Circuit. See Lerner, 318 F.3d at 121 n.6; City of New York v. Smokes-Spirits.Com, Inc., 541 F.3d 425, 440 n.20 (2d Cir. 2008).

In their opposition, Plaintiffs argue that the Supreme Court in Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992) considered three "factors" in deciding whether or not there was proximate cause, and that those factors militate in favor of finding proximate cause here. Opp. at 30-33. These policy considerations that Plaintiffs call the "*Holmes* factors," however, are not a separate test for proximate cause. See id. at 269 (holding proximate cause is a requirement for any RICO claim and discussing policy factors as "reasons" for this). Rather, Holmes confirmed that in order for there to be RICO standing, there must be a "direct relation between the injury asserted and the injurious conduct alleged." 503 U.S. at 268. Yet even if one were to apply the three "*Holmes* factors" to the present case, it would further demonstrate the insufficiency of Plaintiffs' proximate cause allegations. See Reply Memorandum of Points and Authorities in Support of Vanguard Defendants' Motion to Dismiss ("Vanguard Reply Mem.") at 9-10.

The Vanguard Defendants make these arguments in greater detail in their reply memorandum in support of their motion to dismiss, filed on December 11, 2008, which the Acadian Defendants join in all respects and fully incorporate herein. See Vanguard Reply Mem. at 2-10.

## II.   PLAINTIFFS HAVE FAILED TO PLEAD ANY RICO PREDICATE ACTS.

Plaintiffs concede that they must plead predicate acts constituting a "racketeering activity" to avoid dismissal. See 18 U.S.C. §§ 1962(c) & (d); Opp. at 23. Further, they acknowledge that the only predicate acts they attempt to plead are based on their theory that purchasing publicly traded shares violates the statute prohibiting "financ[ing]" or "own[ing]" illegal gambling businesses. 18 U.S.C. § 1955. See Opp. at 23-24. Plaintiffs' interpretation of what constitutes criminal conduct is untenable. Moreover, they fail to plead facts satisfying even their own incorrect interpretation of what constitutes predicate acts.

### A.   Plaintiffs Misinterpret the Meaning of "Finances" and "Owns" in 18 U.S.C. § 1955.

Plaintiffs do not cite any authority to support their proposition that purchasing shares of a publicly traded company can constitute a felony under 18 U.S.C. § 1955. See Opp. at 23-25. Rather, they rely solely on the statutory language to assert that someone who purchases such shares "finances … or owns all or part of [the] … business." Id.; 18 U.S.C. § 1955.

Because the statute does not define "finances" or "owns," the Court must look to the ordinary meaning of those terms, which Plaintiffs fail to do. United States v. Dauray, 215 F.3d 257, 260 (2d Cir. 2000). "Finances" means to "provide funds or capital." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 2002). Given this ordinary meaning, purchasing publicly traded shares on the open market cannot constitute "financing" of a business -- the funds are provided to the previous investor, not to the company. Plaintiffs only allege aftermarket share purchases, and therefore cannot allege that any defendant provided funds or capital to a gambling business.

"Owns" does not have an ordinary, unambiguous meaning. See Commander Oil Corp. v. Barlo Equipment Corp., 215 F.3d 321, 327-28 (2d Cir. 2000) (listing numerous definitions of

"owner" and "ownership" and holding that "the term 'owner' has no natural meaning"). When a statutory term is ambiguous, courts apply established principles of statutory construction to determine its meaning. See Dauray, 215 F.3d at 262-64. These statutory construction principles compel rejection of plaintiffs' interpretation of "owns." For example, "where general words follow a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated." Id. at 262. The other activities enumerated in Section 1955 show that active involvement in the illegal business is required for criminal liability; accordingly "owns" in Section 1955 cannot mean "invests in publicly traded stock."

Furthermore, "[a] statute should be interpreted in a way that avoids absurd results." Id. at 264; see United States v. X-Citement Video, Inc., 513 U.S. 64, 68-69 (1994) (rejecting "most natural grammatical reading" of criminal statute because it would produce absurd results). Plaintiffs concede that under their view, even a share purchaser who holds a single share of a publicly traded stock for a single day would be a felon. Opp. at 26-27.

Legislative intent weighs heavily against Plaintiffs' interpretation. See Dowling v. United States, 473 U.S. 207, 213 (1985) (with federal criminal statutes, courts "must pay close heed to language, legislative history, and purpose in order strictly to determine the scope of the conduct the enactment forbids"). Plaintiffs do not dispute that Congress enacted 18 U.S.C. § 1955 in order to punish only those with such a substantial involvement in illegal gambling businesses as to be of national concern. See Memorandum of Points and Authorities in Support of Vanguard Defendants' Motion to Dismiss, filed October 27, 2008 ("Vanguard Mem.") at 15. Plaintiffs do not point to a national concern about passive investors who merely purchase publicly traded shares and have no active involvement in the operations of the business.

Finally, federal criminal statutes are to be construed narrowly. See Dowling, 473 U.S. at 213-14; United States v. Bridges, 493 F.2d 918, 922 (9th Cir. 1974). This rule of statutory construction requires an interpretation of "owns" that would avoid putting every shareholder of a publicly traded corporation at risk of being labeled a felon.

The Vanguard Defendants make these arguments in greater detail in their reply memorandum in support of their motion to dismiss, filed on December 11, 2008, which the Acadian Defendants join in all respects and fully incorporate herein. See Vanguard Reply Mem. at 10-12.

### B. Plaintiffs Essentially Concede Their Failure to Plead Facts Necessary to Support Predicate Acts.

Even under their untenable interpretation of Section 1955, Plaintiffs essentially concede their failure to plead facts necessary to support a predicate act. Plaintiffs rely on only two paragraphs of their Complaint -- paragraphs 27 and 48. Opp. at 25-26. Those paragraphs, however, merely contain conclusory allegations that the Funds "purchase[d] shares in 'illegal gambling businesses as that term is used in 18 U.S.C. § 1955," Compl. ¶ 37, or recite almost verbatim the elements set forth in Section 1955. Compl. ¶ 40. Such conclusory allegations are insufficient. As the U.S. Supreme Court has held, plaintiffs are obligated to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007). Plaintiffs have failed to allege facts to support their alleged predicate acts, such as the identity of the gambling businesses upon which they base their claims and the U.S. states (if any) in which those businesses purportedly operated.

The mere fact that certain gambling businesses may be listed in the Funds' SEC filings does not mean Defendants know which businesses are the subject of Plaintiffs' claims and does

not abrogate Plaintiffs' pleading requirements. Contrary to Plaintiffs' assertions, a plaintiff's pleading obligations are not fulfilled by generalized assertions of what a defendant "should know." Rather, Rule 8(a)(2) requires plaintiffs to plead sufficient facts in order to prevent meritless actions that threaten to waste the time and money of both the parties and the court. Twombly, 550 U.S. 544, 127 S. Ct. at 1966-67. Plaintiffs' conclusory allegations do not satisfy the pleadings requirements, as set forth in Twombly.

The Vanguard Defendants make these arguments in greater detail in their reply memorandum in support of their motion to dismiss, filed on December 11, 2008, which the Acadian Defendants join in all respects and fully incorporate herein. See Vanguard Reply Mem. at 12-14.

## III. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE DERIVATIVE AND BECAUSE PLAINTIFFS HAVE FAILED TO PLEAD DEMAND FUTILITY.

Plaintiffs' direct claims must be dismissed because they only allege harm to the Funds themselves. Plaintiffs concede that their RICO claims are entirely derivative and not direct because the only alleged injury is a drop in the share price of the *Fund* -- which harms the Funds directly and only derivatively harms investors through a drop in Fund value. See Opp. at 63. Nevertheless, Plaintiffs try to argue that the Court should allow their direct claims to go forward and cite to Holmes for support. Opp. at 64. But courts facing similar complaints have consistently concluded that Holmes bars direct RICO standing by shareholders who cannot allege an injury "separate and distinct from the injury sustained by the corporation." Manson v. Stacescu, 11 F.3d 1127, 1131, 1131-32 (2d Cir. 1993). See McKinney v. Moore, No. 04 Civ. 07926 (RCC), 2007 WL 1149253, *5 (S.D.N.Y. Apr. 16, 2007); Lakonia Mgmt. Ltd. v. Meriwether, 106 F. Supp. 2d 540, 552 (S.D.N.Y. 2000). Plaintiffs strain to characterize their injuries as direct and distinct. Opp. at 62-63. Yet these characterizations do not change the fact

that the only alleged injury Plaintiffs seek to redress is an injury to the Funds.  It is axiomatic that Plaintiffs cannot bring direct claims to redress such an alleged injury.

Plaintiffs' derivative suit may not proceed because Plaintiffs have failed to plead demand futility.  Under Delaware law, a plaintiff suing derivatively on behalf of a statutory trust may show demand futility by "set[ting] forth with particularity," Del. Code Ann. tit. 12, § 3816(c), "particularized factual allegations" creating a reasonable doubt that the board is "independent and disinterested."  Rales v. Blasband, 634 A.2d 927, 934 (Del. 1993); see Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984).  Plaintiffs have not satisfied this standard.

The Trustee and Fund Defendants make these arguments in greater detail in their memorandum in support of their motion to dismiss, filed October 27, 2008, and in their reply memorandum, filed on December 11, 2008, which the Acadian Defendants join in all respects and fully incorporate herein.  See Trustee and Fund Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss the Complaint.

## IV.   THE COURT SHOULD NOT GRANT PLAINTIFFS LEAVE TO AMEND THEIR COMPLAINT BECAUSE AMENDMENT WOULD BE FUTILE.

Even if Plaintiffs were to amend their complaint and assert the facts identified in their Opposition, their claims would still fail as a matter of law.  Plaintiffs admit that their alleged injuries were caused by a government "crackdown" as opposed to the alleged racketeering injury, so there can be no finding of proximate cause.  See Section I supra.  Moreover, Plaintiffs' RICO claim is based on an unsupportable theory that any investor who purchases publicly traded shares of internet gambling companies is a felon.  See Section II supra.  Regardless of the additional facts Plaintiffs would plead, these flaws in their complaint would still be fatal as a matter of law.  Accordingly the Complaint should be dismissed with prejudice.  Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 118 (2d Cir. 2007); Hayden v. County of Nassau, 180 F.3d 42,

53 (2d Cir. 1999). Furthermore, the Court should decline to exercise supplemental jurisdiction over any remaining state law claims. See 28 U.S.C. § 1367(c); Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006).

## CONCLUSION

For the reasons stated above, Plaintiffs have failed to state a claim, and the Acadian Defendants respectfully submit that the complaint should therefore be dismissed with prejudice and without leave to amend.

Respectfully submitted,

ACADIAN ASSET MANAGEMENT LLC, RONALD D. FRASHURE, JOHN R. CHISHOLM and BRIAN K. WOLAHAN,
By their attorneys,

/s/ Kirk G. Hanson
Kenneth S. Leonetti
Brandon F. White (*pro hac vice*)
Kirk G. Hanson (*pro hac vice*)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210
Telephone: (617) 832-1000
Facsimile: (617) 832-7000

Dated: December 11, 2008
Boston, Massachusetts

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Kirk G. Hanson
Kirk G. Hanson

Dated: December 11, 2008
Boston, Massachusetts