UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Deanna McBrearty and Marylynn Hartsel, individually, derivatively and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>              -against-<br><br>The Vanguard Group, Inc., George U. Sauter, Duane F. Kelly, John J. Brennan, Charles D. Ellis, Rajiv L. Gupta, Amy Gutmann, JoAnn Heffernan Heisen, Andre F. Perold, Alfred M. Rankin, Jr., J. Lawrence Wilson, Acadian Asset Management, LLC, Ronald D. Frashure, John R. Chisholm, Brian K. Wolahan, AllianceBernstein LP, Henry S. D'Auria, Sharon E. Fay, Kevin F. Simms, Marathon Asset Management, LLP, William J. Arah, Jeremy H. Hosking, and Neil M. Ostrer,<br><br>              Defendants,<br><br>              -and-<br><br>Vanguard International Equity Index Funds, d/b/a Vanguard European Stock Index Fund, and Vanguard Horizon Funds, d/b/a Vanguard Global Equity Fund,<br><br>              Nominal Defendants. | 08 CV 7650 (DLC)<br><br>ECF Case |

**Reply Memorandum of Points and Authorities
in Support of Vanguard Defendants' Motion to Dismiss**

                            QUINN EMANUEL URQUHART
                               OLIVER & HEDGES, LLP
                            865 South Figueroa Street, 10th Floor
                            Los Angeles, California  90017-2543
                            (213) 443-3000

                            *Attorneys for Defendants The Vanguard
                            Group, Inc., George U. Sauter, and Duane
                            F. Kelly*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I. PLAINTIFFS CONCEDE THAT THE ALLEGED "RACKETEERING" ACTIVITY WAS NOT THE PROXIMATE CAUSE OF THEIR INJURIES .................. 2

    A. Plaintiffs Admit Their Injuries Resulted from an Intervening Cause and That They Were Intended Beneficiaries, Rather Than Intended Victims, of the Predicate Acts .................................................................................................. 3

        1. Plaintiffs' Injuries Did Not Result Directly from the Alleged Racketeering Activity .................................................................................. 3

        2. Plaintiffs Were Not Targets or Intended Victims of the Predicate Acts ................................................................................................................ 5

    B. The *Holmes* Factors Themselves Demonstrate That Plaintiffs Cannot Allege Proximate Cause. ....................................................................................... 7

II. THE COMPLAINT FAILS TO PLEAD PREDICATE ACTS ..................................... 10

III. AS AN ADDITIONAL BASIS FOR DISMISSAL, PLAINTIFFS' CLAIMS ARE DERIVATIVE, AND PLAINTIFFS HAVE FAILED TO PLEAD DEMAND FUTILITY ......................................................................................................................... 14

IV. THE COURT SHOULD NOT GRANT LEAVE TO AMEND BECAUSE ANY AMENDMENT WOULD BE FUTILE ........................................................................... 14

CONCLUSION ............................................................................................................................. 15

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Abrahams v. Young & Rubicam, Inc.*,
    79 F.3d 234 (2d Cir. 1996) ................................................................................................ 5

*In re American Express Co. Shareholder Litigation*,
    39 F.3d 395 (2d Cir. 1994) ............................................................................................ 4, 5

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ............................................................................................ 2, 3, 4, 8

*Baisch v. Gallina*,
    346 F.3d 366 (2d Cir. 2003) ....................................................................................... 3, 6, 7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007) .......................................................................... 13, 14

*City of New York v. Smokes-Spirits.Com, Inc.*,
    541 F.3d 425 (2d Cir. 2008) ............................................................................................ 7

*Commander Oil Corp. v. Barlo Equipment Corp.*,
    215 F.3d 321 (2d Cir. 2000) ........................................................................................... 11

*In re Crazy Eddie Sec. Litig.*,
    714 F. Supp. 1285 (E.D.N.Y. 1989) ................................................................................ 5

*Desiano v. Warner-Lambert Co.*,
    326 F.3d 339 (2d Cir. 2003) ............................................................................................ 7

*Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005) ........................................................................................... 7

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003) ....................................................................................................... 11

*Dowling v. United States*,
    473 U.S. 207 (1985) ....................................................................................................... 12

*Hecht v. Commerce Clearing House, Inc.*,
    897 F.2d 21 (2d Cir. 1990) .............................................................................................. 5

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258 (1992) ........................................................................................ 2, 6, 8, 9, 10

*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003) ..................................................................................... 1, 6, 7

*In re Mastercard Int'l, Inc. Internet Gambling Litig.*,
    132 F. Supp. 2d 468 (E.D. La. 2001) .......................................................................... 9, 10

*Ritchie Capital Management LLC v. Coventry First LLC*,
  2008 WL 542596 (S.D.N.Y. Feb. 29, 2008) ............................................................... 5

*United States v. Bridges*,
  493 F.2d 918 (9th Cir. 1974) ................................................................................... 12

*United States v. Dauray*,
  215 F.3d 257 (2d Cir. 2000) ............................................................................. 11, 12

*United States v. Hawes*,
  529 F.2d 472 (5th Cir. 1976) ................................................................................... 12

*United States v. Miller*,
  774 F.2d 883 (8th Cir. 1985) ................................................................................... 14

*United States v. White*,
  980 F.2d 836 (2d Cir. 1992) ................................................................................... 13

*United States v. X-Citement Video, Inc.*,
  513 U.S. 64 (1994) ................................................................................................. 12

## **Statutes**

28 U.S.C. § 1367(c)(3) ................................................................................................... 15

18 U.S.C. § 1955 ............................................................................................... *passim*

18 U.S.C. § 1962 ........................................................................................................... 10

## **Other Authorities**

18 C.J.S. Corporations § 9 ............................................................................................ 12

Webster's Third New International Dictionary (3d ed. 2002) ....................................... 11

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition ("Opp.") confirms that their RICO and other claims must be dismissed. Plaintiffs' admissions, discussed below, confirm that (1) plaintiffs cannot establish proximate cause under RICO for any of their claimed injuries; (2) the conduct they allege is not a criminal violation and thus cannot suffice as a predicate act under RICO; (3) assuming there are any claims at all, plaintiffs' claims belong to the Funds themselves; and (4) plaintiffs have not satisfied the requirements for bringing derivative claims on behalf of the Funds.

First, plaintiffs' RICO claims must be dismissed with prejudice because plaintiffs cannot allege proximate cause, and will never be able to do so. Plaintiffs concede that their claimed injuries were caused by a government "crackdown" on internet gambling, and admit there "is no other factor that could reasonably be blamed for the dramatic, sudden, and synchronized price drops." Opp. at 32. This admission is fatal to any RICO claim; plaintiffs have no argument that their injuries were proximately caused by the purchases of shares (as opposed to a change in the government's enforcement policies, or "crackdown"), which they claim were the predicate acts. Further, plaintiffs cannot allege—as their own lead case requires—that they were "the targets, competitors and intended victims of the racketeering enterprise." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 124 (2d Cir. 2003). Rather, plaintiffs concede they were the intended *beneficiaries*. *See* Opp. at 3 (conceding defendants were seeking "bigger returns for investors [i.e., plaintiffs]"). Under controlling Supreme Court and Second Circuit law, plaintiffs cannot meet the RICO proximate cause standard, and their RICO claims should be dismissed.

Second, plaintiffs do not allege a predicate act. The only conduct they allege—the purchase of shares of publicly traded companies—is not a "felony," as plaintiffs claim. Opp. at 23. Plaintiffs cannot point to a single instance in which 18 U.S.C. § 1955 was applied to open-market stock purchasers in the manner they suggest, Opp. at 24-26, and every applicable tenet of

1

statutory construction rejects plaintiffs' expansive view of this criminal statute. What is more, plaintiffs fail to satisfy even their version of the statute, failing to plead facts establishing that any "illegal gambling business" is at issue.

Third, the Opposition fails to respond to the showing in the moving papers that plaintiffs' RICO and state-law claims are derivative and that plaintiffs have failed to make a demand or adequately allege demand futility. The Vanguard Defendants hereby join in the Trustee and Fund Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss the Complaint ("Trustee Reply"), which sets forth these arguments in greater detail.

The failures of the Complaint cannot be remedied by amendment. No amount of detail can turn plaintiffs' hindsight complaints about investment decisions into a RICO violation. The Vanguard Defendants respectfully request that the Court dismiss the complaint with prejudice.

## ARGUMENT

### I. PLAINTIFFS CONCEDE THAT THE ALLEGED "RACKETEERING" ACTIVITY WAS NOT THE PROXIMATE CAUSE OF THEIR INJURIES

Plaintiffs have standing to pursue a RICO claim only if they can show the alleged racketeering activity was the proximate cause of their alleged injuries. *See, e.g.*, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006); *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). Plaintiffs both acknowledge this standard and admit repeatedly that something *other than* defendants' alleged purchases of shares caused the injuries of which they complain—the government's so-called "crackdown" on gambling companies, which is plaintiffs' hyperbolic way of describing a change in the government's enforcement policies. *See, e.g.*, Opp. at 10-11, 29, 32, 39. Based on these admissions, and similar admissions in the Complaint, plaintiffs cannot ever satisfy the RICO proximate cause requirement.

2

A.  **Plaintiffs Admit Their Injuries Resulted from an Intervening Cause and That They Were Intended Beneficiaries, Rather Than Intended Victims, of the Predicate Acts**

In arguing that they can maintain RICO claims despite admitting that the government's change in enforcement policy (the "crackdown") caused their injuries, plaintiffs misread governing case law. They argue that the alleged share purchases were a but-for cause, and that it was "foreseeable" that other causes might intervene and cause losses. But every case plaintiffs cite applies the same rule: proximate cause is lacking when the alleged injuries were caused by the acts of intervening third parties or where the plaintiffs were not the targets or intended victims of the alleged racketeering enterprise. *See, e.g.*, *Anza*, 547 U.S. at 461 ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."); *Baisch v. Gallina*, 346 F.3d 366, 374 (2d Cir. 2003) (asking whether plaintiffs were "targets, competitors [or] intended victims of the racketeering enterprise"). Plaintiffs' allegations fail on both counts.

1.  **Plaintiffs' Injuries Did Not Result Directly from the Alleged Racketeering Activity**

Plaintiffs admit repeatedly that the government's intervening actions were the direct cause of their injuries:

● "The market value of those investments plummeted when law enforcement officials began arresting principals of, and otherwise targeting for prosecution, illegal gambling businesses. That directly injured investors like Plaintiffs . . . ." Opp. at 10-11;

● "When the share prices of the illegal gambling businesses plummeted because US law enforcement shut down the companies' unlawful revenue sources, the NAV of the Nominal Defendants declined by that precise amount on a per-share basis." Opp. at 29;

● "[T]he illegal gambling businesses' stock prices declined in direct response both to the commencement of the government crackdown on the illegal activity and around the time that the illegal gambling businesses announced that they would withdraw from the US market. There is no other factor that could reasonably be blamed for the dramatic, sudden, and synchronized price drops." Opp. at 32;

3

- "[T]he injury of which Plaintiffs complain (the loss in value of their mutual fund shares) flowed directly from the loss of illicit revenue suffered by the unlawful gambling businesses when authorities stepped up enforcement of the criminal laws." Opp. at 39.

Plaintiffs do not contest that, to establish proximate cause under RICO, they must show their injuries *directly* resulted from the alleged RICO violation. Opp. at 38-41; *see also Anza*, 547 U.S. at 461 (proximate cause is established only where "the alleged violation led directly to the plaintiff's injuries"). Although plaintiffs attempt to distinguish controlling case law, they never even cite *Anza*, the most recent Supreme Court case, which was cited numerous times in Vanguard's moving papers. Motion at 6-7, 9, 11-12. In *Anza*, the plaintiff (Ideal) claimed it was injured when the defendant, its competitor, submitted fraudulent tax filings to the State of New York. 547 U.S. at 454-55. This fraud allegedly allowed the defendant to charge lower prices and thus take business away from the plaintiff. *Id*. The Supreme Court held that RICO proximate cause had not been established, because the "direct victim of this conduct was the State of New York, not Ideal. It was the State that was being defrauded and the State that lost tax revenue as a result." *Id.* at 458. Here the direct victims of the alleged conduct were any gamblers who lost money as a result of the alleged illegal gambling businesses.

Similarly, plaintiffs fail to address meaningfully the numerous Second Circuit cases that mandate dismissal of their RICO claims for lack of proximate cause. In each of these cases, the Second Circuit held that there is no direct injury, and no RICO proximate cause, where (as here) a plaintiff's claimed injury resulted from exposure or disruption of the racketeering activity, not the alleged racketeering activity itself:

- With respect to *In re American Express Co. Shareholder Litigation*, 39 F.3d 395, 400 (2d Cir. 1994), plaintiffs state that the Second Circuit's "reference to exposure [of the racketeering activity as the actual proximate cause] was by way of explaining that plaintiffs' injury was only remotely related to the alleged predicate acts." Opp. at 38. But that is the point: *American Express* ruled that where, as here, an alleged injury is caused by exposure or disruption of the

4

racketeering activity, it is only remotely related to the alleged predicate acts, and proximate cause cannot be established. *See* 39 F.3d at 400 ("[T]he commission of the RICO violations is not what injured American Express. Rather, it was the exposure of those acts that caused the appellants' harm.").

- Plaintiffs describe *Abrahams v. Young & Rubicam, Inc.*, 79 F.3d 234, 239 (2d Cir. 1996), as "simply a case where the plaintiff's alleged injuries had no direct connection with the alleged predicate acts." Opp. at 39. But in *Abrahams* the injuries had no direct connection *because* they were caused by government indictments (i.e., a "crackdown") and not the racketeering conduct itself. 79 F.3d at 236, 238-39 (erroneously indicted plaintiff's "failure to establish a RICO claim stems from the fact that he was not 'the target of the racketeering enterprise.'").

- Plaintiffs ignore both *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990), and *In re Crazy Eddie Sec. Litig.*, 714 F. Supp. 1285, 1291 (E.D.N.Y. 1989) cited in Vanguard's moving papers, each of which held that RICO proximate cause is not established where the injury resulted from the discovery of the racketeering activity and not the racketeering activity itself.

- Similarly, plaintiffs admit that in *Ritchie Capital Management LLC v. Coventry First LLC*, 2008 WL 542596 at *6 (S.D.N.Y. Feb. 29, 2008), the plaintiffs were not able to establish proximate cause because their injuries resulted from disclosure of the scheme, not the scheme itself. Opp. at 41.

The above cases are controlling. Each held there is no RICO proximate cause when the claimed injuries resulted from exposure or disruption of the racketeering, not the racketeering itself. Opp. at 38-41. Plaintiffs admit, repeatedly, that their alleged injuries occurred only "when authorities stepped up enforcement." Opp. at 39. Plaintiffs' argument that proximate cause exists for any injury that is "foreseeable" ignores the governing standards; in each of the above cases, it was "foreseeable" that the indirect injury to the plaintiff might occur, but there was no RICO proximate cause. Plaintiffs cannot point to a single case that upheld proximate cause when an intervening change in government enforcement policies—or, more generally, actions by third parties—caused the claimed losses. Plaintiffs' own admissions negate proximate cause.

## 2. Plaintiffs Were Not Targets or Intended Victims of the Predicate Acts

Plaintiffs also cannot establish that they were the targets or intended victims of the alleged predicate acts (the share purchases); rather, they concede they were the intended

5

beneficiaries of defendants' investments. *See, e.g.*, Opp. at 36 ("Defendants' investments in illegal gambling businesses may have been partly intended to benefit Plaintiffs . . . ."). As the Second Circuit has repeatedly held, RICO proximate cause requires plaintiffs to be "the targets, competitors and intended victims of the racketeering enterprise." *Lerner*, 318 F.3d at 124. Having admitted that defendants' investments in gambling companies were made to benefit plaintiffs and other Vanguard fund investors, plaintiffs cannot allege facts showing they were the targets or intended victims of the very same investments.

Unable to meet the Second Circuit test, plaintiffs advance two straw-man arguments instead. First, they argue that proximate cause does not require intent to harm. *See* Opp. at 35-36. Plaintiffs' intent argument misconstrues the "intended victims" language in *Lerner* and is irrelevant; no one is arguing there had to be intent to harm plaintiffs, but plaintiffs do need to show they were "targets" or "intended victims" in the sense that they were the direct victims of the predicate acts. The very case plaintiffs cite reiterated *Lerner*'s standard to establish proximate cause, a plaintiff must be a target, competitor, or intended victim. *Baisch*, 346 F.3d at 374-75 (proximate cause under *Lerner* was established "because Baisch was a 'target[] ' and 'intended victim[] of the racketeering enterprise.'") (quoting *Lerner*, 318 F.3d at 124). Because plaintiffs have admitted that they were intended beneficiaries of the alleged racketeering activity, they fall outside the scope of permissible plaintiffs under *Lerner* and cannot establish proximate cause.

Second, plaintiffs criticize cases cited by defendants as "older" Second Circuit cases that applied a discredited "zone of interests" test. Opp. at 37. This is just semantics. As the Second Circuit recently made clear, the "proximate cause" test in *Holmes* (on which plaintiffs principally rely) is just another name for the "zone of interests" test used in the Second Circuit. *See Lerner*,

318 F.3d at 121 n.6.  Just a few months ago, the Second Circuit again noted that "the 'zone of interests' standing analysis is merely a reformulation of our proximate cause analysis." *City of New York v. Smokes-Spirits.Com, Inc.*, 541 F.3d 425, 440 n.20 (2d Cir. 2008).  The RICO proximate cause cases cited *by plaintiffs* all include examination of whether the plaintiffs are targets or intended victims of the alleged racketeering, a test plaintiffs cannot satisfy.  *See* Opp. at 35-37 (citing *Baisch*, 346 F.3d 366; *Diaz v.* Gates, 420 F.3d 897 (9th Cir. 2005); *City of New York*, 541 F.3d 425; and *Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003)):

- In *Baisch*, the court held that proximate cause under *Lerner* was established "because Baisch was a 'target[]' and 'intended victim[]' of the racketeering enterprise."  347 F.3d at 374 (quoting *Lerner*, 318 F.3d at 124).

- In *Diaz*, the plaintiff had alleged that police officers fabricated evidence and tampered with witnesses to obtain a false conviction against him.  420 F.3d at 898.  These allegations put the plaintiff squarely within the group of targets, competitors, or intended victims of the racketeering activity.

- In *City of New York*, the Second Circuit found "it is clear that the City is alleged to be the target of the scheme because a large part of, if not the driving force behind, defendants' business plans was to sell cigarettes in such a way as to allow consumers to evade New York City's taxes."  541 F.3d at 443.

- *Desiano* was not even a RICO case; it involved claims based on New Jersey state law.  326 F.3d at 339.  The Second Circuit found RICO causation standards did not apply, reiterating that "the proximate cause requirements of RICO are more stringent than those of most states," *id.* at 348, but found in any event that "the insurance companies were the direct victims of Defendants' fraudulent marketing."  *Id.* at 351.

Every case cited by plaintiffs confirms there cannot be proximate cause where, as here, plaintiffs do not fall within the "targets, competitors and intended victims" categories identified in *Lerner*.

> **B.     The *Holmes* Factors Themselves Demonstrate That Plaintiffs Cannot Allege Proximate Cause.**

Plaintiffs argue that the Vanguard Defendants attempt to apply established precedent in a "bright line" fashion instead of discussing the three *Holmes* factors and applying them to

plaintiffs' allegations. Opp. at 34, 38, 41. This argument misconceives both the precedent on which defendants rely and, more broadly, the role of precedent in jurisprudential analysis.

The policy considerations that plaintiffs call the "*Holmes* factors" are not some separate test for proximate cause. *See Holmes*, 503 U.S. at 269 (holding proximate cause is a requirement for any RICO claim and discussing policy factors as "reasons" for this. *Holmes* confirmed that the rule for RICO standing is whether there is a "direct relation between the injury asserted and the injurious conduct alleged." 503 U.S. at 268. In short, the precedents defendants cite incorporate the *Holmes* factors, apply them to facts that are meaningfully similar to the facts alleged here, and find that proximate cause cannot be established.[1] Controlling precedent has *already* done the "weighing" of the *Holmes* factors that plaintiffs urge, and has already found that allegations meaningfully similar to plaintiffs' are deficient. Defendants are not arguing for a "bright line" rule—other than a "bright line" rule that allegations rejected as insufficient in controlling case law should be ruled insufficient here. In any event, applying the three *Holmes* factors in the rote (and repetitive) way plaintiffs urge further illustrates the insufficiency of plaintiffs' proximate cause allegations.

The first reason given by *Holmes* for requiring RICO plaintiffs to show they were directly injured by the alleged racketeering conduct is that "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiffs' damages attributable to the violation, as distinct from other, independent, factors." 503 U.S. at 269. In arguing this factor, plaintiffs advance a comically oversimplified damage calculation theory that impermissibly assumes (i) all

---

[1] It is not true that defendants "virtually ignore the three *Holmes* factors." Opp. at 34. Defendants discussed the factors extensively, citing to *Anza*, a more recent Supreme Court decision. *See* Motion at 9-10, 12. Plaintiffs, of course, more than "virtually" ignore *Anza*; in their 68-page Opposition they do not cite *Anza* even once.

8

losses in gambling stocks are attributable to initial investment decisions, rather than to the change in the government's enforcement procedures that plaintiffs admit caused the losses; and (ii) any alternative investment would have been profitable. Opp. at 32. In reality, allocating damages between investment decisions and later "crackdowns," and determination of the likely performance of other possible investments would be insuperably complicated.

The second *Holmes* policy consideration is that "recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries." *Id.* at 269. This factor also supports dismissal. If investors in gambling stocks (or investors in funds holding such stocks) were permitted to bring RICO claims, any damages would have to be apportioned between those plaintiffs and others more directly injured by the gambling businesses, such as gamblers whose money was taken or competitors who ran their businesses legally. Apportioning damages among gamblers, legal competitors, and downstream investors would be a Herculean task, if achievable at all.

The third *Holmes* consideration is "directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." *Id.* at 269-70. Here, there are two obvious "directly injured victims" that would bring suit if, as is not the case, there were any merit to plaintiffs' claims: injured gamblers and injured legitimate gambling enterprises. Plaintiffs scoff at the idea that gamblers would actually bring RICO claims, but that is exactly what happened in *In re Mastercard Int'l, Inc. Internet Gambling Litig.*, 132 F. Supp. 2d 468 (E.D. La. 2001). In that case, the plaintiffs had lost money by placing bets through internet gambling sites. *Id.* at 474-75. They brought a class action against Mastercard and Visa, alleging that defendants had engaged in

9

racketeering activity by processing charges made at internet gambling sites in violation of Section 1955. *Id.* at 474. The court dismissed the complaint, finding that the conduct alleged by the gamblers did not violate any statute. *Id.* at 483. If defendants' conduct here actually were illegal, gamblers, competitors and other directly injured, proper plaintiffs could be counted on to vindicate their rights.

By contrast, investors such as plaintiffs cannot be counted on to enforce the law, as they benefit from the alleged illegality so long as it is profitable. It would run counter to *Holmes* to permit these plaintiffs, who only sued after the government's enforcement actions caused their investments to lose money, to bring RICO claims. Plaintiffs here brought no claim, and had no reason to, while the allegedly illegal investments were profitable; they filed suit only after the government "crackdown" caused the investments to lose value. Permitting indirectly injured investors to sue, but only after a "loss of illicit revenue," Opp. at 39, would not satisfy any *Holmes* factor. The Court should dismiss plaintiffs' RICO claims for lack of proximate cause.

## II.  THE COMPLAINT FAILS TO PLEAD PREDICATE ACTS

Plaintiffs concede they must plead predicate acts constituting "racketeering activity" to avoid dismissal. *See* 18 U.S.C. §§ 1962(c), (d); Opp. at 23. They further concede that the only predicate acts they attempt to plead are all based on their theory that publicly traded share purchases violate the statute prohibiting "financ[ing]" or "own[ing]" illegal gambling businesses, 18 U.S.C. § 1955. *See* Opp. at 23-24. Plaintiffs' expansive view of what constitutes criminal conduct under Section 1955 is untenable, and they have not pleaded facts to satisfy even their misguided view of what constitutes predicate acts.

First, plaintiffs do not and cannot cite any authority for their position that purchasing shares of a publicly traded company qualifies as a felony under Section 1955. Opp. at 23-25. Instead, they rely on the language of the statute in arguing that one who purchases a company's

10

publicly traded shares "finances . . . or owns all or part of [the] . . . business." *Id.*; 18 U.S.C. § 1955. Because Section 1955 does not define "finances" or "owns," a court must first look to the ordinary meaning of those words, which plaintiffs tellingly fail to address. *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000); Opp. at 24.

"Finances" means to "provide funds or capital." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 2002). Purchasing publicly traded shares on an open market cannot possibly constitute "financing" a business consistent with the ordinary meaning: an investor that purchases shares on an open market provides funds to predecessor investors—and provides no funds or capital to the company. Alleging only aftermarket share purchases, plaintiffs do not and cannot allege that any defendant provided funds or capital to any gambling business.

"Owns" does not have an ordinary, unambiguous meaning. *See Commander Oil Corp. v. Barlo Equipment Corp.*, 215 F.3d 321, 327-28 (2d Cir. 2000) (listing myriad definitions of "owner" and "ownership" and holding that "the term 'owner' has no natural meaning").[2] When a statutory term is ambiguous, courts apply established principles of statutory construction, rather than accepting *ipse dixit* assertions such as those plaintiffs make. *See Dauray*, 215 F.3d at 262-64. The statutory construction principles compel rejection of plaintiffs' interpretation of "owns":

- Review of the other terms in Section 1955 shows that "owns" cannot mean "invests in publicly traded stock."[3] The other activities enumerated in Section

---

[2] For example, "owns" could mean maintains record ownership, *see Commander Oil Corp.*, 215 F.3d at 327, which would subject every brokerage firm to criminal liability. "Owns" could also mean controls a business, *see id.*, which would limit criminal liability to controlling management shareholders. Or "owns" could mean owns the business's assets, which would not support liability for mere shareholders. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets.").

[3] Although plaintiffs argue there is no basis to distinguish between shareholders of a publicly traded company and of a closely held corporation, *see* Opp. at 24, there is obviously a significant difference. Public corporations typically have thousands of shareholders who have no

11

   1955 show that active involvement in the illegal business is required for criminal liability. *See Dauray*, 215 F.3d at 262 ("'[W]here general words follow a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated.'"); Motion at 14-15.[4]

- Avoiding absurd consequences requires that "owns" not mean "invests in publicly traded stock." *See Dauray*, 215 F.3d at 264 ("A statute should be interpreted in a way that avoids absurd results."); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68-69 (1994) (rejecting "most natural grammatical reading" of criminal statute as it would produce absurd results). As plaintiffs concede, under their view, hundreds of thousands of share purchasers—even those holding a single share of a publicly traded stock for a single day—would be felons. Opp. at 26.

- Legislative intent demonstrates that "owns" cannot mean "invests in publicly traded shares of a business." *See Dowling v. United States*, 473 U.S. 207, 213 (1985) ("[W]hen assessing the reach of a federal criminal statute, we must pay close heed to language, legislative history, and purpose . . . .."). Plaintiffs do not dispute that 18 U.S.C. § 1955 was enacted to punish only those with such a substantial involvement in illegal gambling businesses that their conduct was of national concern. Motion at 15. Plaintiffs can point to no national concern about passive investors with no involvement in the operations of the business.

- Finally, the rule that federal criminal statutes are to be narrowly construed requires an interpretation of "owns" that would avoid making every shareholder of a publicly traded corporation a felon. *See Dowling*, 473 U.S. at 213-14; *United States v. Bridges*, 493 F.2d 918, 922 (9th Cir. 1974).

The Opposition addresses none of these canons of statutory construction, and for good reason—each compels a finding that plaintiffs' interpretation of Section 1955 is untenable.

Second, plaintiffs essentially concede that they have failed to plead facts necessary to support predicate acts, even under their misguided view of Section 1955. Plaintiffs cite

---

control over operations, whereas "[a] 'close corporation' is one in which management and ownership are substantially identical." 18 C.J.S. Corporations § 9.

   [4] Plaintiffs' assertion that "financ[ing]" is passive, Opp. at 25, similarly has no support. Providing funds or capital to a business typically involves direct negotiations with a company and due diligence not involved in public share purchases. Plaintiffs incorrectly state that the Fifth Circuit "rejected virtually the same argument" in *United States v. Hawes*, 529 F.2d 472 (5th Cir. 1976). Opp. at 25. In reality, the court in *Hawes* rejected the argument that the defendants there, who actively *managed* a gambling business, also had to be gamblers to be liable under Section 1955. *Hawes*, 592 F.2d at 478. *Hawes* is inapposite.

paragraphs 37 and 48 of their Complaint—to argue that they have sufficiently identified an illegal gambling business.  Opp. at 25.  But paragraph 37 merely contains the conclusory allegation that the Funds "purchase[d] shares in 'illegal gambling businesses' as that term is used in 18 U.S.C. § 1955."  Compl. ¶ 37.  Paragraph 48 merely recites the elements of an illegal gambling business set forth in Section 1955(b)(1).  *Compare* Compl. ¶ 48 *with* 18 U.S.C. § 1955(b)(1).  As the Supreme Court held in *Twombly*, plaintiffs must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007).  Plaintiffs have not alleged necessary facts, such as the identity of the gambling businesses on which they base their claims, where those businesses operated, and what laws those businesses allegedly violated.  *See* Motion at 13-14; 18 U.S.C. § 1955(b)(i) (defining an illegal gambling business as one that "is a violation of the law of a State of political subdivision in which it is conducted").

      Plaintiffs contend they are not required to allege such facts, arguing that the identity of gambling businesses need not be alleged in a criminal Information and that the businesses at issue are purportedly identified in the Funds' SEC filings.  Opp. at 25-26.  A criminal Information obviously involves different pleading requirements.  *See, e.g.*, *United States v. White*, 980 F.2d 836, 843-44 (2d Cir. 1992).  That certain gambling businesses may be listed in the Funds' SEC filings does not mean defendants know which businesses are the subject of plaintiffs' claims, let alone that plaintiffs are excused from federal pleading rules.  Plaintiffs' theory that a defendant "should know" what conduct is at issue would eliminate the need for fact pleading altogether.  To the contrary, Rule 8(a)(2) requires plaintiffs to plead facts to prevent meritless actions that threaten to waste the time and resources of the parties and the court.

*Twombly*, 550 U.S. 544, 127 S. Ct. at 1966-67. Plaintiffs' conclusory allegations that defendants purchased shares in "illegal gambling businesses" do not satisfy Rule 8(a)(2) or *Twombly*.

Finally, plaintiffs argue that Rule 8(a)(2) does not require them to plead the individual state laws that were allegedly violated. To the contrary, "the particular state statute alleged to have been violated is an essential and substantive element of a violation of 18 U.S.C. section 1955." *United States v. Miller*, 774 F.2d 883, 885 (8th Cir. 1985).[5]

### III. AS AN ADDITIONAL BASIS FOR DISMISSAL, PLAINTIFFS' CLAIMS ARE DERIVATIVE, AND PLAINTIFFS HAVE FAILED TO PLEAD DEMAND FUTILITY

Plaintiffs have no ability to bring direct claims under RICO to redress injury to the Funds, a principle they concede. *See* Opp. at 63 ("Plaintiffs recognize that a shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock."); Trustee Reply at 8-11. Similarly, they lack standing to bring direct state-law claims. *See id.* at 11. A derivative suit is not permitted under these circumstances, where plaintiffs have not made a demand upon the Trustees and have not adequately pleaded that a demand would be futile. *See id.* at 12-15. For these, and the reasons set forth in the Trustee Defendants' moving and reply papers, which the Vanguard Defendants join and incorporate by reference herein, plaintiffs' purported direct and derivative claims must be dismissed.

### IV. THE COURT SHOULD NOT GRANT LEAVE TO AMEND BECAUSE ANY AMENDMENT WOULD BE FUTILE

Even if plaintiffs were to amend their complaint to assert all of the additional facts asserted in their Opposition, their claims would still fail as a matter of law. The Opposition adds

---

[5] As plaintiffs' own materials make clear, there is a great deal of uncertainty whether any of these businesses violated any state gambling laws. *See* Trustee Reply at 4.

14

significant detail that confirms plaintiffs' concession that it was a government "crackdown," not the alleged racketeering activity, that caused their alleged injuries. *See supra* Section I. Similarly, the Opposition makes clear that the RICO claim is based on the insupportable theory as to what constitutes criminal conduct. *See supra* Section II. Because no amount of additional facts can save these flawed theories, the RICO claims should be dismissed with prejudice, and the Court should decline to exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

The Vanguard Defendants respectfully submit that the complaint should be dismissed with prejudice and without leave to amend.

DATED: Los Angeles, California
December 11, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By: s/ Harry A. Olivar, Jr.
Harry A. Olivar, Jr.
harryolivar@quinnemanuel.com

865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Sascha N. Rand
sascharand@quinnemanuel.com
Quinn Emanuel Urquhart Oliver & Hedges, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendants The Vanguard Group, Inc., George U. Sauter, and Duane F. Kelly*